■ THE PEOPLE OF THE STATE OF NEW YORK ex rel. KENNETH J. SCHREIBER, on Behalf of RALPH ROMANO, JR., Respondent, v WARDEN OF THE QUEENS HOUSE OF DETENTION FOR MEN, Appellant. [723 NYS2d 96] —In a habeas corpus proceeding, the appeal is from a judgment of the Supreme Court, Queens County (Lonschein, J.), dated May 25, 2000, which, after a hearing, sustained the writ to the extent of setting bail in a criminal action entitled *People v Romano,* pending under Queens County Indictment No. 3673/99, in the amount of $2,000,000, in the form of an insurance company bail bond or cash.

Ordered that the judgment is reversed, on the law, without costs or disbursements, and the proceeding is dismissed.

Considering, among other things, "[t]he nature of the offense, probability of conviction, and severity of the sentence which may be imposed, all increasing the risk of flight or unavailability for trial" (*People ex rel. Parone v Phimister,* 29 NY2d 580, 581; *see, People ex rel. Mascia v Jacquin,* 184 AD2d 542; CPL 510.30 [2] [a]), we conclude that the determination of the bail-fixing court denying the bail application of Ralph Romano, Jr., was the product of "an exercise of discretion resting on a rational basis" (*People ex rel. Parone v Phimister, supra,* at 581; *see, People ex rel. Brown v Bednosky,* 190 AD2d 836). Therefore, in granting the habeas corpus petition, the Supreme Court exceeded the narrow scope of its review powers, and erred in substituting its discretion for that of the bail-fixing court (*see, People ex rel. Lazer v Warden,* 79 NY2d 839; *People ex rel. Parker v Hasenauer,* 62 NY2d 777; *People ex rel. Geitschier v Bednowsky,* 227 AD2d 510; *People ex rel. Moore v Bednosky,* 198 AD2d 251). Santucci, J. P., S. Miller and Schmidt, JJ., concur.

Friedmann, J., dissents and votes to affirm the judgment with the following memorandum: By Queens County Indictment No. 3673/99 Ralph Romano, Jr., the relator in the instant habeas corpus proceeding, was charged with two counts of murder in the second degree in connection with the June 1989 shooting death of his mother's "common-law husband." On May 2, 2000, Romano was arraigned on the charges before Justice Robert Hanophy in Supreme Court, Queens County, and pleaded not guilty. Defense counsel requested that the court release Romano on bail "consistent with the charges" and Romano's background, and informed the court that "[a] bail package close to one million dollars could be secured to collateralize." Counsel claimed that Romano was not a flight risk, noting, *inter alia,* that although the investigation had been ongoing for about 11 years, Romano had remained in the juris-

diction despite knowing that he was a suspect, that his prior criminal record was limited to one conviction for a nonviolent, class D felony, that he owned a business that did work for New York City agencies, and had a wife and five-month old child.

The prosecutor opposed the application, arguing that Romano should be remanded without bail. He noted the severity of the crime, that the People had a strong case against Romano, and that Romano's character and background did not warrant bail. The prosecutor also implied that Romano was a flight risk because he had access to substantial assets in other jurisdictions, including Europe, and had contacts outside the country. Finally, he invited Justice Hanophy to inspect the Grand Jury minutes, which would show that the People had "a substantial case" against Romano.

In response to the prosecutor's statements, defense counsel assured the court that Romano would appear in court as required, and suggested the possibility of home confinement with electronic monitoring. At this point, the court remanded Romano, but stated that it would "be glad to revisit the subject" after defense counsel had "a little time to immerse [himself] more in this case."

On May 9, 2000, the parties again appeared before Justice Hanophy on Romano's request for bail. Defense counsel suggested that he had put together a "substantial bail package," which included real property owned by Romano and his father, and stated that it could be supplemented if the court deemed it necessary. Further, he reiterated that Romano had remained in the jurisdiction during the lengthy investigation, that Romano was married and had an infant child, and that he was trying to maintain and run his business.

The prosecutor opposed Romano's application for the reasons he had set forth at the May 2, 2000, arraignment. He further stated that the bail package proposed by defense counsel would be insufficient in light of the assets allegedly available to Romano. The prosecutor again asked Justice Hanophy "not to set bail in this matter due to the nature of the charges and the People's representation about the substance of the evidence." Justice Hanophy adjourned the matter, stating that he would "be in a better position to grant or deny bail" after reading the Grand Jury minutes.

On May 18, 2000, the parties once again appeared before Justice Hanophy. After informing the court that he had increased the amount of his proposed bail package, defense counsel reiterated that Romano was not a flight risk. Once more, the prosecutor opposed Romano's application, claiming

that he was a flight risk because of the strength of the People's case against him. After further argument, Justice Hanophy acknowledged that the bail package proposed by defense counsel was "very impressive," but denied bail, stating: "I read the Grand Jury minutes. The defendant is remanded."

Thereafter, defense counsel, on behalf of Romano, commenced the instant proceeding for a writ of habeas corpus before Special Term, Part 10, in Supreme Court, Queens County, on the ground that Justice Hanophy's denial of Romano's bail application constituted an improvident exercise of discretion. Counsel noted that Justice Hanophy had improperly relied exclusively on the strength of the People's case in denying the bail application. He also asserted that there was overwhelming evidence that the defendant would not flee the jurisdiction. Thus, he claimed, Justice Hanophy had "unconstitutionally" denied bail because "there were no findings sufficient to justify 'remand' under CPL 510.30." In support of the petition, counsel submitted, *inter alia*, some 26 letters from various family members, friends, employees, and business associates supporting Romano's release on bail, as well as the minutes of the bail proceedings before Justice Hanophy on May 2, and May 9, 2000. It does not appear that the minutes of the May 18, 2000, proceedings before Justice Hanophy were submitted to the court.

On May 25, 2000, the habeas corpus petition came before Justice Lonschein in Supreme Court, Queens County. The People opposed the petition, arguing that Justice Hanophy's refusal to set bail was not arbitrary and capricious, but rather, a rational exercise of discretion based upon the facts presented to him. Thereafter, Justice Lonschein proceeded to question Romano's attorney and the prosecutor about the merits of Romano's underlying bail application, inquiring about all of the factors which a bail-fixing court should consider when determining whether a defendant should be released on bail (*see,* CPL 510.30). The prosecutor requested that Justice Lonschein read the Grand Jury minutes, referred to Romano's prior criminal record, and claimed that Romano had "the means to flee the jurisdiction." Defense counsel then addressed the same factors, arguing, *inter alia*, that the strength of the People's case was only one factor to consider on Romano's bail application. He emphasized that Romano was not a flight risk because he had remained in the jurisdiction even though he knew that he was the subject of investigation in the underlying crime. Further, Romano owned an ongoing, productive business with about 80 employees, he had been a Queens County resident all of his life, and he was married, with a six-month old child.

Justice Lonschein stated that he would "skim through the significant things" in the Grand Jury minutes, and consider other factors as well, such as Romano's support in the community and the fact that Romano did not flee even though he knew that he was the subject of the investigation.

After a short recess during which he reviewed the Grand Jury minutes, Justice Lonschein returned and reminded the prosecutor that "there is no such thing as preventative detention" in this State. In response, the prosecutor asserted that Justice Hanophy's "decision not to set any bail was a reasonable exercise of discretion on his part for which there was a rational basis." Justice Lonschein, however, replied that, as the Justice assigned to hear bail review applications, he had "to make my own determinations based upon the situation as I see it." Justice Lonschein stated that he was "going to fix bail because of [Romano's] roots in the community more than anything else." In a judgment dated May 25, 2000, Justice Lonschein sustained the writ to the extent of fixing bail in the amount of $2,000,000, cash or insurance company bond.

The People appeal from this judgment. Pending the appeal, by decision and order of this Court dated June 7, 2000, the People's motion to stay enforcement of the judgment was denied.

It has been repeatedly recognized that when conducting collateral review of a determination of the court which originally set or denied bail, a habeas corpus court has a narrow scope of review powers available to it (*see, People ex rel. Cassar v Bednowsky,* 231 AD2d 656; *People ex rel. Geitschier v Bednowsky,* 227 AD2d 510; *People ex rel. Brown v Bednosky,* 190 AD2d 836; *People v Mohammed,* 171 Misc 2d 130, 133). That is, the function of a habeas corpus court is to review the action of the bail-fixing court to determine whether "the constitutional or statutory standards inhibiting excessive bail or the arbitrary refusal of bail are violated" (*People ex rel. Klein v Krueger,* 25 NY2d 497, 499; *see, People ex rel. Rosenthal v Wolfson,* 48 NY2d 230, 233; *People ex rel. Robinson v Campbell,* 184 AD2d 988). "The habeas corpus court is not to 'examine the bail question afresh' or to make a '*de novo* determination of bail'" (*People ex rel. Rosenthal v Wolfson, supra,* at 232, quoting *People ex rel. Klein v Krueger, supra,* at 501; *People ex rel. Siegel v Sielaff,* 182 AD2d 389; *People v Mohammed, supra*). When the determination of the bail-fixing court "was the product of 'an exercise of discretion resting on a rational basis'," the habeas corpus court may not substitute its discretion for that of the bail fixing court (*People ex rel. Cassar v Bednowsky,*

*supra,* at 657, quoting *People ex rel. Parone v Phimister,* 29 NY2d 580, 581; *see, People ex rel. McVann v Bednosky,* 227 AD2d 423; *People ex rel. Moore v Bednosky,* 198 AD2d 251). Finally, when reviewing the determination of the bail-fixing court, "the habeas corpus court must of necessity be limited to consideration of the propriety of that determination in the light of the record on which it was made" (*People ex rel. Rosenthal v Wolfson, supra,* at 232-233; *People ex rel. Gamble v Romano,* 172 AD2d 575; *People ex rel. Mordkofsky v Stancari,* 93 AD2d 826).

Here, the minutes of the proceedings before the habeas corpus court, particularly certain comments made by the court during the proceedings, demonstrate that that court made a de novo determination of bail, and merely substituted its discretion for that of the bail-fixing court. Thus, in sustaining the writ to the extent that it did, the habeas corpus court exceeded the narrow scope of its review powers (*see, People ex rel. Cassar v Bednowsky, supra; People ex rel. Geitschier v Bednowsky, supra; People ex rel. Moore v Bednosky, supra; People ex rel. Brown v Bednosky, supra*). Moreover, without undertaking a review of the entire record before the bail-fixing court, especially the minutes of the proceedings on May 18, 2000, at which the bail-fixing court actually denied Romano's bail application, the habeas corpus court "had no basis upon which to determine that remand was an abuse of discretion" (*People ex rel. Siegel v Sielaff, supra,* at 390; *see, People ex rel. Mordkofsky v Stancari, supra*).

Nevertheless, I would affirm the judgment appealed from. The record demonstrates that the writ filed on behalf of Romano has merit. As argued by the petitioner in the instant proceeding, review of the minutes of the proceedings before the bail-fixing court demonstrates that it improperly denied Romano's application for bail based solely on the strength of the People's case, without any finding that Romano was a risk of flight, and without considering the other factors listed in CPL 510.30 (2) (a) (*see, People ex rel. Benton v Warden,* 118 AD2d 443). Thus, the determination to deny Romano's application for bail did not constitute " 'an exercise of discretion resting on a rational basis' " (*People ex rel. Cassar v Bednowsky, supra,* at 657, quoting *People ex rel. Parone v Phimister, supra,* at 581; *People ex rel. Geitschier v Bednowsky, supra; People ex rel. Moore v Bednosky, supra; People ex rel. Brown v Bednosky, supra*), but rather, constituted an improvident exercise of discretion (*see, People ex rel. Benton v Warden, supra; People ex rel. Bryce v Infante,* 144 AD2d 898).

Finally, when all of the factors listed in CPL 510.30 (2) (a)

are considered, the bail set by the habeas corpus court was sufficient to secure Romano's attendance at future court proceedings, which is "the only matter of legitimate concern" at a bail proceedings (*Matter of Sardino v State Commn. on Judicial Conduct*, 58 NY2d 286, 289; *see*, CPL 510.30 [2] [a]; *People ex rel. Lobell v McDonnell*, 296 NY 109, 111; *People ex rel. Masselli v Levy*, 126 AD2d 501; *People ex rel. Mordkofsky v Stancari*, *supra*). In connection with this, it should be noted that during the pendency of the instant appeal, Romano has made all court appearances required of him. Although not a factor to be considered on the instant appeal, it does tend to support the conclusion that he does not present a risk of flight.