■ THE PEOPLE OF THE STATE OF NEW YORK ex rel. RONALD L. KUBY, on Behalf of GIGI JORDAN, Appellant, v DARLENE MERRITT, Respondent. [947 NYS2d 454]—

Judgment, Supreme Court, New York County (Larry Stephen, J.), entered September 21, 2011, denying the writ of habeas corpus and dismissing the petition, unanimously affirmed, without costs.

In February 2010, petitioner, Gigi Jordan, was charged with second-degree murder stemming from allegations that she intentionally caused the death of her eight-year-old autistic son by giving him an overdose of prescription medication. Petitioner also ingested a number of pills and left a suicide note stating that her son's death was the only way to protect him from his

allegedly abusive father and that she did not wish to live without him.

Following arraignment, petitioner asked the court to set bail in the amount of $5 million, with a specific condition that she be released to a psychiatric facility. Supreme Court (Daniel FitzGerald J.) denied the request and remanded petitioner with the understanding that the application could be renewed before the assigned judge. On renewal, petitioner offered to post a $5 million bond fully secured by her New York City properties, and to freeze her assets, allegedly totaling approximately $40 million, by placing them in an escrow account to be managed by two named attorneys. She also proposed that her release be conditioned on a security package providing that she would be confined to her Manhattan brownstone and monitored round the clock by on-premises armed security guards and an electronic G.P.S. system, at her own expense, and on her continued psychiatric treatment.

By order dated April 23, 2010, Supreme Court (Charles Solomon, J.), considering the factors enumerated in CPL 510.30 (2) (a), denied the application. Petitioner, by new counsel, moved for reconsideration of bail "under the same conditions and restrictions that apply to Dominique Strauss-Kahn." By order dated August 11, 2010, Justice Solomon denied the application. After hearing argument, Justice Stephen denied the writ of habeas corpus and dismissed the petition on the ground that it "[could] not say based on the seriousness of this case and all of the other factors laid out at these bail hearings that [Justice Solomon] did abuse his discretion."*

"The action of the bail-fixing court is nonappealable, but may be reviewed in a habeas corpus proceeding if it appears that the constitutional or statutory standards inhibiting excessive bail or the arbitrary refusal of bail are violated" (*People ex rel. Rosenthal v Wolfson*, 48 NY2d 230, 231-233 [1979] [internal quotation marks omitted]). It is not the function of the habeas court to "examine the bail question afresh or to make a de novo determination of bail" (*id.* [internal quotation marks omitted]). The scope of inquiry is whether or not the bail court abused its discretion by denying bail without reason or for reasons insufficient in law (*id.*; *People ex rel. Hunt v Warden of Rikers Is. Correctional Facility*, 161 AD2d 475 [1990], *lv denied* 76 NY2d 703 [1990]). Where the record shows that the bail court

---

* On September 22, 2011, a Justice of this Court denied petitioner's request for bail on an interim basis pending appeal. On November 10, 2011, this Court denied petitioner's motion for bail pending appeal (2011 NY Slip Op 89516 [2011]).

considered the factors enumerated in CPL 510.30 (2) (a), and the "denial is supported by the record, it is an exercise of discretion resting on a rational basis and thus beyond correction in habeas corpus" (*People ex rel. Parker v Hasenauer*, 62 NY2d 777, 778-779 [1984]; *see also People ex rel. Lazer v Warden, N.Y. County Men's House of Detention*, 79 NY2d 839 [1992]).

Applying these principles, Justice Stephen properly found that Justice Solomon's determination denying the bail application was "an exercise of discretion resting on a rational basis" (*People ex rel. Parone v Phimister*, 29 NY2d 580, 581 [1971]). "The record supports the bail court's determination, based upon the factors enumerated in CPL 510.30 (2) (a), that petitioner is a flight risk, given the severity of the crime charged, . . . the likelihood of a conviction and lengthy sentence, [the lack of strong ties to this community] and the financial resources petitioner could use to facilitate flight, including [the possibility of] property outside the jurisdiction" (*People ex rel. Litman v Warden of Manhattan House of Detention*, 23 AD3d 258 [2005], *lv denied* 6 NY3d 708 [2006]; *People ex rel. Schreiber v Warden of Queens House of Detention for Men*, 282 AD2d 555 [2001]). This is not an appropriate case for granting bail under special conditions, particularly in light of petitioner's mental instability (*see People ex rel. Hunt*, 161 AD2d at 475). There is a sufficient basis in the record for concern that petitioner may not be capable of consistently controlling her fears and impulses, which in the past have led to flight.

Nor are we persuaded by petitioner's argument that the bail court's determination was arbitrary because the court failed to expressly rule on the adequacy of her security package. In its April 23, 2010 decision, the bail court discussed the security package in detail, but nonetheless concluded that "no amount of bail, even when coupled with the very stringent conditions proposed by the defense, can adequately assure defendant's return to court." On renewal, the security package proposed was essentially the same, and in its August 11, 2011 decision, the bail court stated that it "reconsidered its prior decision in light of the new arguments made and still feels that the setting of bail is inappropriate."

The bail court also explained why it rejected petitioner's contention that the bail conditions granted for Dominique Strauss-Kahn compelled the grant of bail here. The court rationally observed that the only similarity between the cases was that both defendants had the financial means to post significant bail and pay for a private security team to monitor them. However, unlike Strauss-Kahn's case, this case involves the

murder of a child, a more serious charge than the charge against Strauss-Kahn, and a greater possibility of conviction, given that petitioner's defense of "altruistic filicide" has not been successfully advanced in any court in this country, which together provide a greater incentive to flee. Further, Strauss-Kahn's mental condition was not at issue in his case. Petitioner's compromised mental state bears directly on her judgment, making her more willing to undertake extreme and even dangerous measures in an effort to abscond.

Petitioner's position, if accepted, would mandate that bail be granted in every case in which the accused has the financial resources to offer private security and monitoring, thereby depriving the court of its discretion to grant or deny bail on consideration of the factors enumerated in CPL 510.30 (2) (a). While petitioner claims that her security package is foolproof and trumps all other factors, the fact remains that no ad hoc arrangement based on keeping a defendant in her private home under the watch of a security firm that she hired could be as secure as remand. Indeed, petitioner is an accomplished woman who accumulated vast financial resources. She has moved around repeatedly, and on previous occasions endeavored to conceal her tracks in doing so. While petitioner contends that she provided an explanation for a $14.5 million transfer from a Swiss bank to the United States, the concern that the bail court expressed that her disclosure was inadequate and that she might have other undisclosed assets was not eliminated. Thus, as the respondent argues, it is not inconceivable that petitioner could by stealth or promise manipulate her way to freedom.

Petitioner also argues that the court did not properly take into account the new evidence she submitted in her renewed bail application regarding her mental condition, her community ties, her financial circumstances, and the likelihood of conviction. However, while the reports indicate that petitioner's mental condition has stabilized, she still suffers from depression. Further, her mental condition was so extreme at the time of the initial application, and such extensive psychiatric treatment was required, that it is rational to conclude that her mental condition at the time of the renewed application remained questionable.

While petitioner presented additional facts intended to demonstrate community ties, the bail court accurately noted that she had resided in various states and did not have family in New York City. These facts support the court's conclusion that she was a flight risk. While the court made observations regarding the overwhelming evidence against petitioner and the

sentence she faces, it did not place undue weight on those factors or otherwise abuse its discretion.

We have considered and rejected petitioner's remaining claims, including all her procedural arguments. Concur—Tom, J.P., Andrias, DeGrasse, Richter and Román, JJ.