OPINION OF THE COURT

Per Curiam.

The State Commission on Judicial Conduct has determined that petitioner, a Judge of the Syracuse City Court, engaged in various acts of misconduct demonstrating a pattern of injudicious behavior rendering him unfit to remain in judicial office. Pursuant to the State Constitution, petitioner commenced this proceeding to review the commission’s findings of fact, legal rulings and determination that he be removed from office (NY Const, art VI, § 22, subds a, d; Matter of Kuehnel v State Comm. on Judicial Conduct, 49 NY2d 465).
*289 In 1973 petitioner was elected as a Judge of the Syracuse City Court. In 1981 the Commission on Judicial Conduct filed a complaint charging him with numerous acts of misconduct committed by him in over 60 cases at which he presided since 1979. The essence of the complaint is that the petitioner’s actions and statements in those cases revealed or created the impression that he did not respect the rights of defendants and lacked the temperament and impartiality required of a Judge.
The commission sustained over 20 charges and numerous specifications. The evidence in the record is voluminous and for the purpose of this appeal need not be discussed in detail. A summary of the salient points should suffice to illustrate the propriety of the commission’s determination.
Most of the petitioner’s misconduct occurred in open court during arraignments. The official records of these proceedings show that petitioner consistently failed (in 62 cases) to inform the accused of the right to counsel and failed to conduct even a minimal inquiry to determine whether they were entitled to assigned counsel. Indeed, even in cases where the accused persons themselves stated that they were unemployed, indigent, or unable to afford an attorney, petitioner did nothing to assist them in obtaining legal assistance. The petitioner admitted to the commission that he deliberately adopted these practices, and in doing so knowingly disregarded his statutory obligations (CPL 170.10, 180.10) because he considered it “counter productive” to read defendants their rights at arraignment.
These court records also demonstrated that the petitioner regularly abused his authority with respect to setting bail. In most of the cases under consideration he arbitrarily required defendants to post bail without inquiry or reference to the statutory standards (CPL 510.30). His conduct and statements at the time show that he was acting punitively with little or no interest in the only matter of legitimate concern, namely, whether any bail or the amount fixed was necessary to insure the defendant’s future appearances in court (CPL 510.30, subd 2, par [a]). He often ordered defendants to be held without bail for no *290 apparent reason, even in cases where bail was required as a matter of law or the offense charged was of such a minor nature that the defendant could not ordinarily be held in custody to assure his appearance in court (see, e.g., CPL 150.75; Penal Law, § 221.05). On several occasions where defendants appeared at arraignment without counsel petitioner summarily and with no express or apparent legal or rational justification ordered that they be held in custody for “mental examinations” (CPL art 730).
The record of the court proceedings also shows that petitioner often assumed an adversarial role at arraignments by questioning defendants about the crime charged, occasionally eliciting incriminating statements and, in other cases, expressing disbelief when the defendants, their attorneys, or family members, maintained their innocence. On these occasions, in addition to treating the accusation as proved, the petitioner stated his views in sarcastic terms and displayed his animosity against the accused by resort to name-calling and dehumanizing remarks. For instance, in open court he commonly referred to those accused as “creatures”, called one defendant a “maniac”, and said that another should be “exterminated”. He informed an attorney representing a defendant charged with traffic violations that it was “[t]oo bad he [the defendant] wasn’t destroyed and the car was still here. That would be beneficial to the community”. In another case he stated that if he had found his daughter with the defendant “that would be another case of homicide”.
The petitioner concedes that these remarks were “excessive” but denies that he felt any bias against the defendants or that his actions at the arraignments were actually motivated by animosity. He also contends that his fitness as a Judge cannot be determined on the existing record because it does not take into account his performance in the more than 5,000 cases at which he presided over the years.
The ability to be impartial is an indispensable requirement for a judicial officer. Equally important is the requirement that a Judge conduct himself in such a way that the public can perceive and continue to rely upon the impartiality of those who have been chosen to pass judg *291 ment on legal matters involving their lives, liberty and property (see, e.g., Matter of Steinberg, 51 NY2d 74). If, as petitioner contends, he did not actually harbor any bias his course of conduct and concededly excessive statements could only create the impression in the mind of the public that he was predisposed against those defendants who appeared before him if not defendants generally.
Although the petitioner may not have been guilty of similar misconduct in all or most of the cases at which he presided, consistent disregard of judicial obligations, abuse of judicial power and intemperate displays of evident bias in 62 cases over a two-year period can hardly be viewed as an isolated incident. At best, the petitioner’s argument that his entire judicial career be considered, would establish that his behavior was erratic, which itself is inconsistent with a Judge’s role.
The petitioner also contends that the commission erred in refusing to allow him to present evidence that his practices were consistent with the general practice of other Judges of the City Court system. Although we doubt that many Judges follow the practices of this petitioner we agree with the commission that such evidence would be irrelevant.
Each Judge is personally obligated to act in accordance with the law and the standards of judicial conduct. If a Judge disregards or fails to meet these obligations the fact that others may be similarly derelict can provide no defense. Indeed one of the obvious reasons for establishing a permanent Commission on Judicial Conduct is to elevate judicial performance by insuring that the practices in the various courts comply with the high standards required of judicial officers.
In sum the evidence in the record amply supports the commission’s determination that “The totality of [petitioner’s] conduct shows a shocking disregard for due process of law. [He] has grossly abused judicial power and process, routinely denied defendants their rights, ignored the mandates of law, disregarded the jurisdiction of other courts, disparaged attorneys, demeaned defendants and otherwise acted in a manner bringing disrepute to the courts and the *292 judiciary. [He] has so distorted his role as a judge as to render him unfit to remain in judicial office.”
Accordingly, the determined sanction of removal should be accepted, without costs.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Fuchsberg, Meyer and Simons concur in Per Curiam opinion.
Determined sanction accepted, without costs, and J. Richard Sardino removed from the office of Judge of the City Court, City of Syracuse.