OPINION OF THE COURT
Dominic R. Massaro, J.
Huwe Burton stands accused of the murder of his mother. He was so indicted for said crime and related offenses (indictment No. 7009/89).
Thereafter, at arraignment, Mr. Burton’s bail was set in the amount of $150,000 cash or surety bond; defendant was not permitted to post a secured appearance bond in the alternative (Hecht, J.). Subsequently, the case was referred to this court for all purposes.
The defense first moved herein to either reduce the bail or allow it to be posted in the form of the aforementioned *717 secured appearance bond. The court granted the application only to the extent of reducing the bail requirement to $100,000 cash or surety bond; it declined to allow defendant to post the desired secured appearance bond in the reduced amount.
On the next court appearance date, defendant renewed his application to authorize the posting of a secured appearance bond in lieu of either cash or surety bond. The application was again denied.
Thereupon, defendant moved in the Appellate Division, First Department, to modify the determination. The motion was denied with leave to file a writ of habeas corpus (Carro, J.).
Mr. Burton instead chose to institute a CPLR article 78 proceeding, seeking an appellate order to direct this court to accept the sought-after secured appearance bond.[1]
In his petition, defendant stated that while this court "recognized that an appearance bond from petitioner’s father, secured by his interest in * * * real property, was permitted by law,” the court opined, "in words or substance, '[t]his is not the custom * * * [the court does not] wish to be involved with real property.’ ”
SUFFICIENCY OF COLLATERAL
Initially, it is of note that, indeed, it is relatively quite rare for real property to be posted as security for bail purposes in the courts of our State. Notwithstanding, the statute clearly provides for same (see, CPL 500.10 [17]).
The Appellate Division granted Mr. Burton’s petition. It would appear, however, that in so doing it labored under a misapprehension as to the reason advanced by this court when denying defendant’s initial application(s) and otherwise declining to become involved with this particular realty. The concern, amply spread on the record — a record not submitted by the People acting on behalf of the Attorney-General in opposition to Mr. Burton’s appeal — respects the fact that the proffered realty is not adequately secured under a strict reading of the statute. Encumbrances existing thereon would of necessity relegate this court to an insufficient secondary position in the event of foreclosure proceedings instituted against said property.
*718 In their answer, the People chose not to share substantive facts with the appellate court. Upon denying their cross motion to dismiss the petition — a cross motion finding comfort in the procedural adequacy of habeas corpus alone — the Appellate Division "unanimously ordered that the application be and the same hereby is granted, to permit bond and real estate collateral to satisfy bail previously fixed at $100,000.00.”
On receipt of the Appellate Division directive, the matter was put down for immediate hearing to determine the sufficiency of the underlying collateral "to satisfy bail”. The court now determines anew that said collateral is insufficient.[2]
PURPOSES OF BAIL
"The primary purposes of bail in a criminal case are to relieve the accused of imprisonment, to relieve the state of the burden of keeping him, pending the trial, and at the same time, to keep the accused constructively in the custody of the court, whether before or after conviction, to assure that he will submit to the jurisdiction of the court and be in attendance thereon whenever his presence is required. Bail is awarded to one accused, under our system of constitutional government, to honor the presumption of innocence until guilt is proved, and to enable the accused to prepare his defense to the charge” (8 Am Jur 2d, Bail and Recognizance, § 4, at 581-582; see also, Stack v Boyle, 342 US 1 [1951]).
While both the Federal and State Constitutions contain a prohibition against excessive bail (see, US Const 8th Amend; NY Const, art I, § 5), there is no per se absolute right to bail (see, Gallagher v Butterworth, 484 F Supp 1278 [SD Fla 1980]; United States ex rel. Vitoratos v Campbell, 410 F Supp 1208 [ND Ohio 1976]; United States ex rel. Fink v Heyd, 287 F Supp 716 [ED La 1968], affd 408 F2d 7, cert denied 396 US 895 [1969]; People ex rel. Shapiro v Keeper of City Prison, 290 NY 393 [1943]). Indeed, the grant or denial of bail, or of release on one’s own recognizance, is a matter of judicial discretion whenever the offense charged is of a felony level (see, CPL 510.30 [1], [2]; 530.20 [2]).
As noted by Judge Joseph W. Bellacosa in his Practice *719 Commentary to CPL 510.30 (McKinney’s Cons Laws of NY, Book 11 A, at 22), it reflects the general principle that the prime matter of legitimate concern is whether any bail or amount fixed is necessary to ensure a principal’s appearances in court (citing Matter of Sardino v State Commn. on Judicial Conduct, 58 NY2d 286, 289 [1983]).
Denial of bail, following consideration of the nature of the charge, the probability of conviction, the possible severity of the sentence as well as the risk of nonappearance by a defendant has been found to be a proper exercise of discretion (see, Matter of Slominski v Rutkowski, 62 NY2d 781 [1984]; People ex rel. Parone v Phimister, 29 NY2d 580 [1971]; People ex rel. Klein v Krueger, 25 NY2d 497 [1969]).
While it has been held that denial of bail because of the likelihood of flight is sufficient (see, People ex rel. Weisenfeld v Warden, 37 NY2d 760 [1975]), denial of bail on the sole ground that a defendant is charged with murder is an improper abuse of discretion (see, People ex rel. Yannarilli v Draxler, 41 AD2d 684 [3d Dept 1973]).
SECURED BAIL BOND
CPL 500.10 (17) defines "secured bail bond”. CPL 500.10 (17) (b) sets forth the requirement for this type of bond where the proffered collateral is comprised of real, rather than personal, property. In essence, it provides that the value of the property must be at least twice the total amount of the required undertaking. Said value, however, does not equate with fair market value; rather, it is determined by a complex "class” formula: dividing the property’s last assessed value by the current equalization rate of the assessing authority wherein the property is situated, and deducting from the quotient the amount of any outstanding lien(s) and/or encumbrance(s).
There is a "blended” equalization rate for New York State, a control figure maintained by the State Board of Equalization and Assessment that reflects a weighted averaging of the equalization rates for all classes of real property.[3] The Real Property Tax Law, however, provides for the creation of "special assessing units”; the City of New York qualifies as one such unit (see, Real Property Tax Law § 1801 [a]; § 1803 *720 [l]).[4] A fair reading of CPL 500.10 (17) suggests that defendant is entitled to benefit from use of the equalization rate established by the City of New York for the specific class of property sought to be posted here. Moreover, use of this class ratio appears to attempt an approximation of the true, or fair market value of the underlying property.
CONCLUSION
In the instant case, the subject property is a two-family house, defined as a Class I property. The applicable class rate for Class I properties is 8.9%.
The assessed value of the subject parcel is $28,400. Divided by the more beneficial 8.9% class equalization rate, the resulting valuation is $319,101. Deducting $163,511.20 for an outstanding first mortgage, the resulting equity is but $155,589.80, an amount more than $44,000 deficient of the $200,000 required by statute.
Accordingly, the court finds that the proffered property is clearly insufficient to satisfy "at least twice the total amount” (CPL 500.10 [17] [b]) of the bail previously fixed at $100,000.[5]

. At all times the proffered secured appearance bond was to be executed by defendant’s father and secured by certain real property in which he enjoyed a fee interest.

. Initially, the elder Mr. Burton offered two parcels for the purpose of security-posting. Following the Appellate Division order, the second parcel (in which Mr. Burton enjoyed only a fractional equity interest) was withdrawn.

. These are four in number: Class I is comprised of one, two and three-family houses; Class II is comprised of apartment houses, including co-ops, condominiums and rentals; Class III is comprised of utility properties; and Class IV is comprised of all other types of commercial property (see, Real Property Tax Law § 1802 [1]).

. The equalization rate established by the City of New York, applying different formulas as for each class, is the percentage of every $100 in assessed value, namely, 8.9%, 45%, 50% and 45%, respectively.

. Said determination leaves for another day consideration of the apparent inequity posed by "classes” of property and differing values resulting therefrom that may be proffered for purposes of bail (as opposed to fair market value), as well as the singular statutory requirement for "at least twice the total amount of the undertaking” (CPL 500.10 [17] [b]), with respect to securing bail with realty (as opposed to cash, personalty or any other form of surety bond).