**UNITED STATES of America**

v.

**Cornelius CARSWELL, Defendant.**

**No. 5:01–CR–68 (FJS).**

United States District Court,
N.D. New York.

April 13, 2001.

Daniel J. French, United States Attorney, Northern District of New York, (Richard R. Southwick, Assistant U.S. Attorney, of counsel), Syracuse, NY, for Plaintiff.

Alex J. Bunin, Office of Public Defender (Lisa A. Peebles, Assistant Federal Defender, of Counsel), Syracuse, NY, for Defendant.

## DETENTION DECISION AND ORDER

SHARPE, United States Magistrate Judge.

### I. *Introduction*

Pending is the government's motion to detain Cornelius Carswell. After a hearing, the court found clear and convincing evidence that Carswell was a danger to the community, but not a flight risk. Despite that finding, the court ordered temporary detention and reserved decision on several issues, most of which implicate the court's authority to detain at all. The parties were then afforded an opportunity to supplement the record, and did so.

The issues are as follows: (1) whether the court may consider an uncharged allegation that a felon possessed a shotgun, a crime of violence mandating a detention hearing (*see 18 U.S.C. § 3142(f)(1)(A)* (2000)); (2) whether an indictment for felonious possession of a shotgun shell charges a crime of violence mandating a detention hearing (*see 18 U.S.C. § 3142(f)(1)(A)*); (3) whether a New York State youthful offender adjudication for robbery may serve as a predicate crime of violence mandating a detention hearing (*see 18 U.S.C. § 3142(f)(1)(D)*); and (4) whether the court may consider bases for detention other than those raised by the government prior to the hearing.

## II. *Facts*

Carswell was indicted for possession of ammunition (a shotgun shell) as a convicted felon in violation of 18 U.S.C. § 922(g)(1). At his arraignment, the government moved for detention pursuant to 18 U.S.C. § 3142(f)(1)(A)(crime of violence), and requested a continuance. The court scheduled a hearing, and notified the parties that they should be prepared to address whether *United States v. Dillard*, 214 F.3d 88 (2d Cir.), *cert. den.*, —— U.S. ——, 121 S.Ct. 1232, 149 L.Ed.2d 141 (2001) compels the conclusion that felonious possession of a shotgun shell constitutes a crime of violence, thereby permitting a detention hearing in the first place.

At the hearing, the court received evidence by proffer and exhibits from the government and Carswell, and adopted the undisputed facts contained in the Pretrial Services Report ("PSR").[1] The record was later supplemented by a PSR Addendum containing additional details of Carswell's criminal history.

The evidence demonstrates that in the early morning hours of November 20, 2000, Shermell Sherman heard a banging on her apartment door, went to investigate, and found that her former paramour, Carswell, was seeking entry. When she refused to let him in, Carswell angrily threatened that he would return. He then retrieved a shotgun from a street peddler, who had earlier offered it for sale, returned to Sherman's apartment, and twice discharged the weapon into the door. The police later discovered that the shots had penetrated Sherman's door and struck her refrigerator.

After shooting, Carswell returned the gun to the peddler, and fled. He was arrested the next morning, confessed and was then charged with several state offenses. He was subsequently indicted by a federal grand jury for possession of ammunition (shotgun shell) as a convicted felon.

During the detention hearing, the government played an audio tape of Sherman's 911 call, recorded in the midst of her ordeal. Clearly, she was distraught and feared for her life. Carswell countered, however, that Sherman's fear had diminished considerably as demonstrated by her frequent post-arrest jail visits, the last of which had occurred shortly before the hearing. After the hearing, Sherman wrote the court requesting Carswell's release.

Carswell, twenty-eight years old, is a lifetime Syracuse resident. He has three children from two non-traditional relationships, and his children and their mothers reside in Syracuse. Prior to his arrest, Carswell worked as a welder.

Carswell has a violent criminal history. In 1990, he was arrested for robbery, assault and possession of a weapon after he struck his victim in the head and back with a wooden fence post and stole his bicycle. He plead guilty to robbery and was adjudicated a youthful offender and sentenced to five years probation.[2] While on probation, he was again arrested for robbery and criminal possession of a weapon. He and two accomplices robbed a gas station while armed with knifes. They threatened the lives of two victims inside the station, and stole a wallet. Carswell and another of the accomplices actually brandished the knives. Carswell was subsequently con-

---

1. The court specifically incorporates the record of the hearing into this decision and order, including the PSR and the court's factual findings.

2. The PSR does not provide Carswell's date of birth, but given his current age, the court presumes that he was sixteen or seventeen at the time of this adjudication.

victed of first degree robbery and sentenced to three to nine years in state prison. He was paroled in 1996, and discharged from parole in 1999. After his discharge, he was arrested and convicted for a petty marijuana offense, arrested for criminal impersonation and aggravated unlicenced operation (misdemeanors), and arrested for the instant offense. The misdemeanor arrests are pending in state court.

At the commencement of the detention hearing and after receipt of the PSR, the government moved to supplement the basis for its detention motion, citing 18 U.S.C. § 3142(f)(1)(D) (two prior convictions for crimes of violence). Carswell objected, asserting that his 1991 youthful offender adjudication could not be considered. After the hearing, the government filed a memorandum and sought to further supplement its motion, asserting 18 U.S.C. § 3142(f)(2)(B) (serious risk to threaten, injure or intimidate a prospective witness). The government alleges that Sherman would be at serious risk if the court released Carswell.

## III. *Analysis*

### A. *General Bail Principles*

A defendant's release is governed by the 1984 Bail Reform Act, 18 U.S.C. §§ 3141 *et. seq. See also, Fed. R. Cr. P. 46(a).* In general, the court must release a defendant on personal recognizance, unsecured bond, or specified conditions, whichever is the least restrictive necessary to assure the defendant's appearance and the safety of others and the community. *18 U.S.C. § 3142(a)(1–2)(b)(c).* The court may detain, however, but only under restricted circumstances and after a hearing following carefully delineated procedures. *See 18 U.S.C. § 3142(a)(4)(e)(f).*

■ The rules governing the actual hearing and the ultimate detention decision are now well established. The evidence may be introduced by proffer since normal evidentiary rules do not apply. *18 U.S.C. § 3142(f); United States v. Ferranti,* 66 F.3d 540, 542 (2d Cir.1995)(*citing United States v. Salerno,* 481 U.S. 739, 743, 107 S.Ct. 2095, 2099, 95 L.Ed.2d 697 (1987)). Under certain circumstances, including charges involving violence or any felony when committed by a defendant who has two predicate violent convictions, the statute creates a rebuttable presumption that there is no condition or combination of conditions that will preclude flight and dangerousness. *18 U.S.C. § 3142(e)(f)(1)(A-D).* Despite that presumption, the government retains the burden of proof, by clear and convincing evidence as to dangerousness, and by a preponderance of the evidence as to flight. *§ 3142(f); Ferranti,* 66 F.3d at 542; *United States v. Chimurenga,* 760 F.2d 400, 405–06 (2d Cir.1985). Clear and convincing evidence is more than a preponderance, but means something less than "beyond a reasonable doubt," instead requiring "that the evidence support such a conclusion with a high degree of certainty." *Chimurenga* at 405 (*quoting Addington v. Texas,* 441 U.S. 418, 431, 99 S.Ct. 1804, 1812, 60 L.Ed.2d 323 (1979)).

■ If the defendant presents rebuttal evidence, the presumption does not disappear completely, but continues to be weighed along with other factors. *United States v. Rodriguez,* 950 F.2d 85, 88 (2d Cir.1991). Those other factors are recited in the statute and include the nature and circumstances of the charged offense, the weight of the evidence, the nature and characteristics of the defendant, the nature and seriousness of the risk to the community, and the risk of flight. *18 U.S.C. § 3142(g); see also, United States v. Jessup,* 757 F.2d 378, 384 (1st Cir.1985). Except for the absence of the statutory pre-

sumption, the same principles govern a hearing based upon a defendant's flight risk or his risk to obstruct justice or to threaten, intimidate or injure witnesses or jurors. *See 18 U.S.C. § 3142(f)(2)*.

■ As to flight and danger, various factors govern the court's consideration. In order to detain for flight, the court must determine whether the defendant is likely to flee the jurisdiction if released, and whether any release conditions will reasonably guard against that propensity. *18 U.S.C. § 3142(e); United States v. Berrios–Berrios*, 791 F.2d 246, 250 (2d Cir. 1986). Regarding dangerousness, the Bail Reform Act is the Congressional expression of concern about a group of dangerous defendants as to whom neither stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community. Thus, "[w]here there is a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate." *United States v. Colombo*, 777 F.2d 96, 98–99 (2d Cir.1985). And, simply prohibiting a defendant from "committing further crimes" is an insufficient condition of release to protect the public from dangerousness. *Id. at 100; see also, United States v. Ferranti*, 66 F.3d at 544. Furthermore, release in cases involving dangerousness risks injury to others while release in cases involving flight risks only a loss of a conviction. *United States v. Orena*, 986 F.2d 628, 630 (2d Cir.1993). So too, the possession of a dangerous weapon demonstrates a capacity for violence. *Id.* at 630.

Recidivism was a substantial motivating factor leading to the Congressional enactment of the Bail Reform Act. As the Supreme Court observed in *United States v. Salerno*, 481 U.S. 739, 742, 107 S.Ct. 2095, 2098, 95 L.Ed.2d 697 (1987), "[r]esponding

to the 'alarming problem of crimes committed by persons on release,' Congress formulated the Bail Reform Act of 1984 as the solution to a bail crisis in federal courts." (internal quotation marks omitted). The Court upheld the Act's provisions permitting detention of those who are dangerous as long as procedural safeguards are met. *Id.* at 750, 107 S.Ct. at 2103. And again, elaborate conditions dependent upon good faith compliance are sometimes insufficient when a defendant's criminal history provides no basis for believing good faith will be forthcoming. *United States v. Tortora*, 922 F.2d 880, 886–87 (1st Cir.1990).

Having recited the principles governing both the hearing and the ultimate detention decision, the court turns to the limits on judicial authority to conduct a hearing and consider detention in the first place.

## B. *Limits On Judicial Detention Authority*

### 1. *Detention Authority Limited To Charged Crimes*

The language employed by Congress in the Bail Reform Act is not always clear, and is therefore subject to interpretation. Without question, the statute mandates release by the least restrictive means necessary to assure appearance and public safety. *18 U.S.C. § 3142(a)(1–2)(b)(c)*. Detention is the last alternative, and must be specifically authorized by the statute. *18 U.S.C. § 3142(a)(4)(e)(f)*. The court must hold a detention hearing in six categories of cases that involve: (1) violent crimes; (2) crimes penalized by life imprisonment or death; (3) drug offenses penalized by sentences of ten years or more; (4) any felony if the defendant has been convicted of two or more predicate offenses in any of the first three categories; (5) any offense when the defendant is a serious flight risk; and, (6) any of-

fense when the defendant is a serious risk to obstruct justice or to threaten, injure or intimidate a witness or juror. *18 U.S.C. § 3142(f)(1)(A-D),(f)(2)(A-B)*. A hearing in the first four categories must be preceded by government motion while the last two may be precipitated by motion of the government or the court. *Id.*

■ There is an argument that while the statutory language mandates a hearing in the six enumerated categories, it does not expressly *preclude* a hearing in others, especially where the defendant is dangerous. However, the Second Circuit has resolved that argument. Before it may consider detention, the court must first decide, by a preponderance of the evidence, that one of the six categories authorizes a hearing in the first place. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir.1988). This is so no matter how dangerous a defendant might be. *Id.* at 49.

■ Whether a particular case meets a category's criteria, however, is also a matter of statutory interpretation. All six categories are preceded by qualifying language requiring that the case "involves" the crime or conduct encompassed by the category. *18 U.S.C. §§ 3142(f)(1)(2)*. Thus for example, a case could involve a crime of violence, thereby precipitating a hearing, without a crime of violence actually having been charged. Naturally, the court would have to first conduct a hearing in order to determine whether the charged offense also "involved" conduct covered by a category, but such hearings are consistent with several of the categories in any event. Thus, the actual charge is irrelevant to the defendant's flight risk or risk to obstruct justice or threaten or intimidate witnesses or jurors. *See 18 U.S.C. § 3142(f)(2)(A-B)*. Hearings involving these risks depend upon factual assertions in support of the motion to detain, not the charge itself. Of course, there would be no hearing under any circumstances absent a government motion or, in two of the categories, absent the court's *sua sponte* motion. Therefore, all motions would be predicated on allegations that the case "involved" the specified risks. The Fifth Circuit has adopted this logic, holding that a case involving conduct encompassed by a category requires a hearing regardless of the specific charge lodged against the defendant. *United States v. Byrd*, 969 F.2d 106, 110 (5th Cir.1992).

Although the Second Circuit appears to disagree, this court is not certain that it has squarely addressed the issue. In *Friedman*, the Circuit stated that the court must first determine that the defendant has been "charged" with one of the enumerated crimes. *Friedman*, 837 F.2d at 49. However, the charging issue was not before the Court since the government had conceded that the underlying offense failed to meet the criteria of those categories where the charge is critical. *Friedman* at 49; *see also*, *18 U.S.C. § 3142(f)(1)(A-C)*. Nonetheless, the Circuit has articulated and applied the formal charge principle in subsequent decisions. In *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir.1985), it ruled, in an analogous context, that the Bail Reform Act's rebuttable presumption arising from the use of a gun in furtherance of narcotics trafficking applied only when the defendant had actually been charged with that offense. The Court stated that to hold otherwise "would rip the fabric of the statute's carefully sewn procedural safeguards." *Id.* at 405 (*internal quotation omitted*). And finally, although stated axiomatically without citation to authority, the Circuit affirmed the principle in another analogous case, *United States v. Dillard*, 214 F.3d 88 (2d Cir.), *cert. den.*, —— U.S. ——, 121 S.Ct. 1232, 149 L.Ed.2d 141

(2001). Although the specific issue in *Dillard* was whether a charged crime was itself a crime of violence, the Court nonetheless preceded its discussion by observing:

> Thus, an arrest for an offense that falls within the statutory definition ... requires a hearing ... [I]f the arrest offense is not within the statutory definition ... no detention hearing will be held ... and the defendant must be released, no matter how violent and dangerous.

*Dillard* at 91.

■■■ The illegal possession of a shotgun by a previously convicted felon (18 U.S.C. § 922(g)(1)) is a crime of violence mandating a detention hearing pursuant to 18 U.S.C. § 3142(f)(1)(A). *Dillard* at 104. The evidence overwhelmingly demonstrates that not only did Carswell, a convicted felon, possess a shotgun, but he used it under circumstances where Shermell Sherman could easily have been killed. Since the court specifically found that Carswell is a recidivist, violent offender who poses an absolute danger to the community that cannot be ameliorated by any set of conditions, it would detain him on this basis if it could. However, since he has not been charged with possession of the shotgun and since the court may not consider uncharged crimes as a basis for conducting a hearing in the first place, the court is powerless to do so.

#### 2. *Possession of a Shotgun Shell by a Convicted Felon as a Crime Of Violence*

The court turns to the issue of whether a defendant indicted as a felon in possession of a shotgun shell has been charged with a crime of violence. *See 18 U.S.C.*

§ 922(g)(1). If so, the court is empowered to hold a hearing. The issue turns directly on an interpretation of the Circuit's holding in *Dillard* that possession of a gun by a felon is a crime of violence. *Id.* at 104. The government interprets *Dillard* as holding that all felon in possession charges are crimes of violence regardless of the items possessed; namely, guns *or* ammunition. Naturally, Carswell counters that *Dillard* applies only to guns, not ammunition.

■■ 18 U.S.C. § 922(g)(1) penalizes the possession of any firearm or ammunition by a convicted felon.[3] Whether an offense is a "crime of violence" for purposes of a mandatory detention hearing (18 U.S.C. § 3142(f)(1)(A)) depends upon the special definition of that term found in the Bail Reform Act itself. As it relates to this issue, the statute provides:

> [T]he term "crime of violence" means—... any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense ...

*18 U.S.C. § 3156(a)(4)(B).* In *Dillard,* the Circuit considered the issue on facts arising in the Western District of New York.

Dillard was arrested as a felon in possession when the police searched his home and found two shotguns and ammunition. *Dillard at 90.* At a subsequent detention hearing, Magistrate Judge Feldman found that Dillard had committed a crime of violence, relying on Chief Judge Larimer's prior holding in *United States v. Campbell,* 28 F.Supp.2d 805 (W.D.N.Y.1998) and his own prior, consistent analysis in *United*

---

**3.** Not all prior felonies may serve as the predicate offense. 18 U.S.C. § 921(a)(20)(A); *see*

*also, Dillard,* 214 F.3d at 90.

States v. Carter, 996 F.Supp. 260 (W.D.N.Y.1998). In Carter, Magistrate Feldman adopted the view that whether an offense is a crime of violence within the Bail Reform Act is limited to an analysis of the nature of the charged offense alone, and not the individual conduct resulting in that charge. Carter, 996 F.Supp. at 262. While Carter did not involve a felon in possession charge, Campbell did. Campbell at 806. Adopting the inherent nature of the offense analysis, Chief Judge Larimer held that a felon in possession of firearms charge was a crime of violence. Id. at 807, 810. Applying his and Judge Larimer's prior analysis, Magistrate Judge Feldman, in Dillard, found that Dillard had committed a crime of violence when he was charged as a felon in possession of the two shotguns and ammunition.[4]

On appeal, the Circuit stated that it was "inclined to agree" with the Western District analysis that the risk of force, an intrinsic element of the Bail Reform Act's definition of crime of violence, must arise from the nature of the offense and not the manner in which the defendant committed it. Dillard, 214 F.3d at 92. However, the Circuit then qualified its inclination by stating:

> This suggests the requirement would not be satisfied when the risk of force results from the conduct or nature of the defendant rather than from the nature of the offense. Because we conclude the defendant in this case is eligible for detention regardless how we answer that question, we need not decide it in this case. We will assume without deciding, for purposes of this opinion, that the use or risk of violence must result from the categorical nature of the offense and that the statute would not be satisfied

where a defendant used violence in the commission of an offense whose nature ordinarily does not give rise to a substantial risk of violence.

Id. at 92. This issue has a significant bearing on this case. A federal grand jury determined that there was probable cause to believe that Carswell possessed a shotgun shell. In turn, the court found that at the time he possessed that shell, he used it in a shotgun to fire through an apartment door, into a refrigerator, and under circumstances where he could easily have killed Shermell Sherman.

Since the Circuit decided to leave the issue for a later date, this court adopts the same philosophy. This is, perhaps, the better course because this court is disinclined to agree that Congress intended to release those whom a judicial officer has found to be repetitive dangerous and violent offenders. Cf. United States v. Byrd, 969 F.2d 106 (5th Cir.1992). The decision to refrain from ruling, however, does not mean that the current facts are irrelevant to the issue of whether possession of ammunition by a convicted felon is a crime of violence.

Applying the Bail Reform Act's statutory definition, the Circuit concluded that possession of a gun by a felon is a crime of violence. Dillard, 214 F.3d at 104. In doing so, it concluded that 18 U.S.C. § 3156(a)(4)(B) had five elements, all of which were satisfied by that charge:

> The elements of the definition provided by clause (B), § 3156(a)(4)(B), are:
>
> (i) The offense must be a felony;
>
> (ii) the offense must involve a "risk that physical force may be used against the person or property of another;"

---

4. The court has been unable to retrieve Magistrate Judge Feldman's Dillard opinion. Accordingly, the court does not know what, if any, distinction he drew between the firearms and the ammunition.

(iii) that risk must result from the nature of the offense;

(iv) the risk must be that the use of physical force would occur "in the course of" the offense; and

(v) the risk must be substantial.

*Id.* at 92–93. Although possession of ammunition is certainly one step removed from possession of the gun in which that ammunition can be used, the definition's elements are satisfied by either charge as the facts of this case demonstrate.

Both charges are felonies, thus satisfying the first element. Both satisfy the second because they involve a risk that physical force may be used against the person or property of another. In that regard, the Circuit stated:

We think it undeniable that possession of a gun gives rise to *some* risk that the gun may be used in an act of violence. By definition, without possessing a gun, one cannot use a gun for the commission of a violent act; with a gun, one can. Possession of a gun increases one's ability to inflict harm on others and therefore involves some risk of violence.

*Id.* at 93 (emphasis in the original). While it is true that violent crimes can be committed with unloaded guns—for instance, pistol whipping or the display of a gun during a robbery—it is the ammunition and the gun which, together, pose the greatest risk of violence. For the same reasons, the third element's requirement that the risk arise from the nature of the offense and the fourth element's requirement that the risk of violent use occur in the course of committing the crime of illegal possession are both met by ammunition and gun charges, again despite the fact that ammunition is one step removed from the gun. Thus, the Circuit observed:

The dangerousness of guns and their adaptability to use in violent crime is why Congress has prohibited their possession by convicted felons ... By possessing guns in violation of that law, previously convicted criminals increase the risk that they may engage in violent acts. The risk results from the nature of the offense ...

[P]ossession of a gun by its nature gives rise to a risk of its use in violence; if that violent use occurs, it will occur in the course of possession; if the possession is a criminal offense, the violent use will occur in the course of the criminal offense of possession.

*Id.* at 93–94. Accordingly, the possession of ammunition by convicted felons by its nature also gives rise to the same risk that violence will occur during the course of its illegal possession. Obviously, the facts of this case demonstrate the point. Carswell's possession of a shotgun shell gave rise to the viable risk that he would use it in a shotgun to commit a crime which is exactly what he did.

■ The fifth element requires that the inherent risk that physical force may be used in the course of committing the offense is substantial. Noting that "substantial" means something less than inevitable and more than a mere risk, the Circuit stated that the standard is met if the risk is "material, important, or significant." *Id.* at 94–95. Recognizing the unclear statutory language, the Circuit relied on legislative history, distinguished contrary authority, and held that the risk of violent use arising from the nature of felons in possession of firearms offenses is substantial. *Id.* at 94–104. As to "material, important or significant," the Circuit observed, in part:

The risk of violent use posed by a convicted felon's possession of firearms is significant. The category of persons under consideration is limited to those who (a) have already been convicted of

one felony (not including crimes of business regulation) and (b) have been charged with a second... We think that among the convicted felons who illegally possess guns, the number who do so by reason of the utility of guns in threatening or causing violence is significant. We find it difficult to accept the proposition that the risk of violent use of guns by convicted felons who possess them illegally is not "substantial."

*Id.* at 94–95. At the risk of using logic that may appear circuitous, the court believes that the current facts demonstrate that the same rationale applies to ammunition. The court may not consider Carswell's uncharged use of the shotgun to hold a hearing in the first instance nor is it likely that all possession of ammunition cases will be accompanied by evidence of gun use. Nonetheless, Carswell, a convicted two-time, violent felon, illegally possessed ammunition which, in fact, served as a precursor to his using the ammunition to load a shotgun and discharge it into an innocent victim's apartment. Those facts amply demonstrate that ammunition possession by convicted felons carries the same inherent risk as does gun possession.

■ Accordingly, the court finds that possession of ammunition by a convicted felon, 18 U.S.C. § 922(g)(1), constitutes a crime of violence as defined in the Bail Reform Act, 18 U.S.C. § 3156(a)(4)(B). Since a crime of violence empowers the court to conduct a detention hearing and since the court has already found that Carswell is a recidivist, violent offender who poses an absolute danger to the community that cannot be ameliorated by any set of conditions, it orders him detained.

### 3. *Youthful Offender Adjudication as a Predicate Felony*

■ Recognizing potential for disagreement with the resolution of the preceding issue, the court turns to predicate felonies. 18 U.S.C. § 3142(f)(1)(D) mandates a detention hearing when one is charged with any felony and has been previously convicted, *inter alia,* of two or more violent crimes. Carswell concedes that robbery is a violent crime, and that two prior robbery convictions require a detention hearing. He asserts, however, that the court must discount his first robbery arrest because he was adjudicated a youthful offender. *See N.Y.C.P.L. §§ 720.10 et. seq. (McKinney's 1995).*

■ New York defines robbery as forcible stealing, accomplished when a defendant steals by using or threatening the immediate use of physical force. *N.Y.P.L. § 160.00 (McKinney's 1990).* Depending upon varying factors such as the extent of victim injuries or the use of dangerous instruments or deadly weapons, robbery is graded into three degrees of increasing seriousness. *Id. at §§ 160.05–160.15.* Since Carswell hit his victim in the back and head with a fence post and stole his bicycle during his first crime, and stole a victim's wallet at knife point during his second, he committed two robberies. In both instances, his conduct meets the Bail Reform Act's literal definition of violent crime. *18 U.S.C. § 3156(a)(4)(A).*

After conviction for certain felonies in New York, adult offenders less than nineteen years old may be adjudicated a youthful offender. *N.Y.C.P.L. §§ 720.10(1–4), 720.20.*[5] In the interest of justice, a court has the discretion to relieve the young adult from the consequences of a criminal

**5.** A youthful offender adjudication is mandatory following certain misdemeanor convictions, but the court limits its analysis to felonies such as the robbery at issue here. *See N.Y.C.P.L. § 720.20(1)(b).*

record and from a more severe sentence than the conviction might otherwise require. *N.Y.C.P.L. § 720.20(1)(a).* If the court does so, it substitutes a youthful offender finding for the conviction and imposes a youthful offender sentence, both of which then constitute the youthful offender adjudication. *N.Y.C.P.L. § 720.10(4–6).* Carswell's 1991 five year probationary sentence was an authorized youthful offender sentence. *N.Y.C.P.L. § 720.20(3); N.Y.P.L. §§ 60.01, 60.02, 65.00.* His youthful offender adjudication does not constitute a criminal conviction in New York. *N.Y.C.P.L. § 720.35(1).* Furthermore, the statute limits the future effect of such an adjudication, providing:

> ₑ Except where specifically required or permitted by *statute* or upon specific authorization of the court, all official records and papers, whether on file with the court, a police agency or the division of criminal justice services, relating to a case involving a youth who has been adjudicated a youthful offender, are confidential and may not be made available to any person or public or private agency ...

*N.Y.C.P.L. § 720.35(2) (emphasis added).*

New York itself recognizes a statutory exception in bail matters to non-disclosure of youthful offender adjudications. There are, however, significant differences between federal and New York bail laws. *Cf. 18 U.S.C. §§ 3141 et. seq. and N.Y.C.P.L. §§ 510.10 et. seq.* Under certain circumstances, federal law permits detention of dangerous defendants while the exclusive focus in New York is future appearance. *N.Y.C.P.L. § 510.10; see also, Sardino v. State Commission on Judicial Conduct,* 58 N.Y.2d 286, 289, 461 N.Y.S.2d 229, 230 (1983); *Preiser, Prac. Comment., foll. N.Y.C.P.L. § 510.30 (McKinney's 1995) at. p. 25.* Bail in New York is discretionary, but the court must apply certain factors, one of which is a defendant's record of previous youthful offender adjudications. *N.Y.C.P.L. § 510.30(2)(a)(v).* In fact, prior juvenile records, statutorily confidential as are those of youthful offender adjudications, are also admissible on the issue of bail. *Matter of Brunetti v. Scotti,* 77 Misc.2d 388, 353 N.Y.S.2d 630 (N.Y.Sup.Ct.1974). Of course, the fact that New York permits consideration of prior youthful offender adjudications on the issue of flight does not necessarily imply that it would permit detention on the basis of two predicate felonies if one of those felonies was a youthful offender adjudication. This, the court cannot discern since no such detention authority exists in New York. Other New York precedent, however, offers some insight.

New York has various sentencing enhancement statutes that escalate punishment of those with predicate felony convictions. *See N.Y.P.L. §§ 60.05(6), 70.04, 70.06* (increased punishment for second felony and second, violent felony offenders). Youthful offender adjudications, however, do not count as predicate convictions and may not serve as a basis for enhancement. *People v. Lane,* 60 N.Y.2d 748, 751, 469 N.Y.S.2d 663, 665, 457 N.E.2d 769 (1983). On occasion, New York treats foreign youthful offender adjudications differently. Thus, in two cases involving statutory schemes similar to that of New York, the court permitted sentencing enhancement in one because the sister state would have done so, and disallowed it in the other because that state would also have disallowed it. *Cf. People v. Kuey,* 83 N.Y.2d 278, 609 N.Y.S.2d 568, 631 N.E.2d 574 (1994) and *People v. Carpenteur,* 21 N.Y.2d 571, 289 N.Y.S.2d 615, 236 N.E.2d 850 (1968).

As to sentencing, the Second Circuit has addressed New York's youthful offender

statute. *United States v. Matthews,* 205 F.3d 544 (2d Cir.2000). In that case, the Circuit considered whether a New York youthful offender adjudication escalated Matthews' criminal history category under the federal sentencing guidelines. *Id. at 546; see also, U.S.S.C. §§ 4A1.2, Application Note 10, 4A1.2(j).* Although the decision hinged on whether the prior adjudication had been "expunged" (a term used by the sentencing guidelines), the Court's analysis is instructive. Distinguishing an earlier decision involving a Vermont statute that removed all vestiges of a prior juvenile proceeding, the Circuit held that New York's statute did not expunge the youthful offender adjudication, instead statutorily .authorizing disclosure under numerous circumstances and to various state and federal agencies. *Matthews,* 205 F.3d at 546, 547–548 (*distinguishing United States v. Beaulieau,* 959 F.2d 375 (2d Cir.1992)). Furthermore, confronting an argument that New York would not permit such use (*citing People v. Gray,* 84 N.Y.2d at 713, 622 N.Y.S.2d 223, 646 N.E.2d 444 (1995)), the Circuit stated:

> Moreover, the fact that New York courts do not use youthful offender adjudications as predicates for enhanced sentencing (*citation omitted*) does not restrict federal courts from taking them into account when imposing sentences under the Guidelines where, as here, youthful offender adjudications are permitted inside and outside the State of New York.

*Id. at 548.* In this court's view, the same rationale applies to the use of New York youthful offender adjudications as predicate felonies under the Bail Reform Act. And again, this view is buttressed by the fact that New York statutorily permits such use in its own bail applications. *N.Y.C.P.L. § 510.30(2)(a)(v).*

Accordingly, the court finds that Carswell's prior New York State youthful offender adjudication for robbery may be considered as one of two prior crimes of violence pursuant to 18 U.S.C. § 3142(f)(1)(D). Since the court is thus empowered to conduct a detention hearing and since the court has already found that Carswell is a recidivist, violent offender who poses an absolute danger to the community that cannot be ameliorated by any set of conditions, it orders him detained on this alternative basis.

**4. *Bases for Detention other than those Raised Prior to the Hearing***

Lastly, the court turns to the government's post-hearing motion to supplement the basis for detention, asserting Carswell's risk to harm Sherman (18 U.S.C. § 3142(f)(2)(B)). This issue is resolved by reference to relevant statutes, judicial precedent and common sense.

 As has been consistently stated, the court may not detain unless authorized to do so by the Bail Reform Act. According to 18 U.S.C. § 3142(a)(4), detention is authorized only pursuant to § 3142(e) which, in turn, requires a hearing in compliance with § 3142(f). § 3142(f) has two pertinent procedural requirements. First, all six categories authorizing a detention hearing (18 U.S.C. § 3142(f)(1)(A-D), (f)(2)(A-B)) must be preceded by a government motion.[6] Second, that hearing "shall be held immediately upon the person's first appearance before the judicial officer," subject to statutory continuances which the court may authorize upon motion of either party. *18 U.S.C. § 3142(f).* Fed. R. Cr. P. 47 requires a movant to state the

---

**6.** The court recognizes that two categories may be precipitated by judicial motion, but limits its analysis to the issue presented. *See 18 U.S.C. § 3142(f)(2)(A-B).*

grounds upon which a motion is made. Accordingly, this Circuit requires that if the government intends to move for detention, it do so at the defendant's first appearance and state the grounds for its motion. *United States v. Melendez–Carrion,* 790 F.2d 984 (2d Cir.1986). "The requisite 'grounds' for a detention motion should include specification of flight, dangerousness, or · both, depending on the prosecutor's good faith belief in the grounds that can be established. In addition, if detention is sought under section 3142(f)(2)(B) on the ground of risk of threat or injury to a witness or juror, or other obstruction of justice, that specific ground should be alleged." *Id.* at 993. The Circuit announced this rule in response to the argument that it was fundamentally unfair to require a defendant to oppose detention without some knowledge of the basis for the motion in the first instance. *Id.* The Circuit also requires that the government make its motion at a defendant's first appearance which, of course, is normally the initial appearance or arraignment. *United States v. Payden,* 759 F.2d 202, 204 (2d Cir.1985); *see also, Fed. R. Cr. P. 5, 10.*

█ Thus, the general rule requires that the government make its motion at the defendant's first appearance and state its grounds for doing so. That is not to say, however, that the general rule cannot give way to common sense. The Circuit itself acknowledged an exception in *Melendez–Carrion,* 790 F.2d at 994, when it observed that because the government had filed a valid motion at the first appearance and supplemented it at the hearing, any error in its failure to comply with the rule was harmless since the defendant had a full and fair opportunity to address the complete detention issue. *See also, United States v. Connolly,* 1999 WL 1995186, *3–4 (D.Conn. Dec. 23, 1999) (Martinez, MJ).

Thus, this court does not hold that the government can never supplement the basis for its detention motion beyond that asserted at the first appearance. In fact, the court permitted the government to do so in this case. Although it asserted dangerousness as the basis for its motion at Carswell's first appearance, it cited his possession of a shotgun shell as a crime of violence in doing so. It did not move to supplement that basis to add the two prior violent felonies until it reviewed the PSR at the hearing, and learned of Carswell's criminal history. Because Carswell had a full and fair opportunity to address that alternative basis, especially in light of the post-hearing supplemental written submissions, it was reasonable to allow the supplementation.

█ It is not reasonable, however, to permit the last supplemental request based on danger to Sherman. The point is amply demonstrated by the fact that following a hurried consultation with her client, defense counsel was able to proffer Sherman's post-arrest visits with Carswell in mitigation of the danger Carswell had otherwise caused at the time of the offense. However, with the time afforded by supplemental briefing, counsel responded to the government's additional motion by attaching a letter from Sherman urging the court to release Carswell.

█ It would be extraordinarily unfair, a violation of the Bail Reform Act, and likely, unconstitutional, for the court to permit continued incarceration of a defendant while the government searched for alternative bases for detention. Therefore, the court reserves the discretionary right to permit supplementation of the basis for detention, contingent on the defendant's ability to respond. The court's ruling in this regard should serve

as an admonition to the government that it carefully review the facts of its case and the Bail Reform Act prior to the defendant's first appearance. While the court does not assert that it will never permit supplementation, it will carefully review what, with due diligence, the government should have known and what fair opportunity the defendant has to respond. *See United States v. Newkirk*, 2000 WL 374933, *2 at fn. 4 (N.D.N.Y.2000) (Sharpe, MJ)(noting a similar ruling by Chief Judge Scullin).

Accordingly, the court finds that Carswell's risk to harm Shermell Sherman is not timely before the court. Therefore, the court does not consider 18 U.S.C. § 3142(f)(2)(B), and declines to detain Carswell on this basis.

## IV. *Conclusion*

Having decided that Carswell has been charged with a crime of violence and that he also has been convicted, according to federal law, of two predicate violent crimes, there is a rebuttable presumption that no condition or combination of conditions exist that will ensure the safety of the community. *See 18 U.S.C. § 3142(e)*. Because he has been indicted, a grand jury has already found probable cause sufficient to trigger the presumption. *United States v. Rodriguez*, 950 F.2d 85, 87 (2d Cir.1991)(*citing United States v. Contreras*, 776 F.2d 51, 55 (2d Cir.1985)). The weight of the evidence supporting the charges is strong and the court has already determined that Carswell poses an absolute and unequivocal risk of danger to the community. Therefore, he has failed to overcome the statutory presumption. In making this determination, the court has considered the nature and circumstances of the offense charged, the weight of the evidence, and Carswell's history and personal characteristics, including the seriousness of this offense, his third violent crime. It is the combination of the serious and violent nature of the current crime coupled with his prior record that leads the court to conclude that it would be far too dangerous to the community to release him. Furthermore, the court is not convinced that home confinement, an electronic bracelet or any other condition or combination of conditions would protect the public. At best, it might provide early warning that Carswell, a recidivist predator, had violated the terms of his release and was, once again, loose in public. This defendant's current and past behavior are the best predictors of how he would perform, if released, and common sense dictates that he remain incarcerated despite his assurances that he would comply with any court directives.

Accordingly, the defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Carswell shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver Carswell to the United States Marshal for the purpose of an appearance in connection with a court proceeding.