OPINION OF THE COURT
Per Curiam.
Petitioner has been a Judge of the Saratoga Springs City Court since 1970 and was previously an acting Judge of that court since 1964. Following an investigation into the propriety of securing orders issued by petitioner in nonfelony criminal cases, the State Commission on Judicial Conduct determined that petitioner engaged in misconduct by abusing the bail process and that, therefore, he should be removed from office. After reviewing the record of the Commission’s proceedings, including in particular the testimony of the petitioner, we conclude that a censure is the appropriate sanction for petitioner’s misconduct, which was both less frequent and less egregious than the Commission’s findings indicate.
The Commission’s investigation focused on petitioner’s bail decisions with respect to approximately 50 defendants that appeared before him in nonfelony cases from 1986 through 1989. Some of these defendants appeared in more than one case. Each defendant had apparently been committed to jail without bail at some point during the pendency of the criminal action. Commission counsel took the position that any such commitment was improper because CPL 530.20 (1) provides that when a defendant is charged with offenses of less than a felony grade, "the court must order recognizance or bail.” During the investigation, petitioner gave two days of testimony before a member of the Commission in which he responded to questioning by a member of counsel’s staff and explained his bail decisions in the cases in question.
On March 8, 1990, the Commission served a formal written complaint upon petitioner containing seven charges of misconduct and alleging violations of sections 100.1, 100.2 and 100.3 (a) (1) and (4) of the Rules Governing Judicial Conduct (22 *356 NYCRR) and Canons 1, 2 and 3 (A) (1) and (4) of the Code of Judicial Conduct. Charge I alleged that in an unspecified number of nonfelony cases petitioner committed defendants to jail, prior to trial, without setting bail in violation of CPL 530.20 (1) and set bail at the time arrest or bench warrants were issued, without giving defendants an opportunity to be heard and without considering factors set forth in CPL 510.30 (2) (a).[1] The remaining six charges set forth specific instances in which petitioner committed six defendants to jail without bail in nonfelony cases.
On September 17, 1990, petitioner, his attorney and the Administrator of the Commission entered into an agreed statement of facts pursuant to Judiciary Law § 44 (5), waiving the hearing provided for by Judiciary Law § 44 (4) and stipulating that the Commission would make its determination on the basis of the agreed-upon facts and various exhibits, including transcripts of petitioner’s prior testimony.
With respect to Charge I, the parties agreed that during the relevant period, in over 50 nonfelony cases involving 44 defendants, petitioner "committed the defendants * * * to jail without setting bail as required by section 530.20 (1) of the Criminal Procedure Law”, that petitioner was aware that the law requires that bail be set on a nonfelony charge and that "on several occasions” representatives of the Public Defender’s office and the Sheriff’s department had informed petitioner that commitments without bail in such cases were improper. In addition, they agreed that in 12 cases petitioner had set bail in connection with the issuance of warrants for defendants’ arrest, at times when the defendants were not before him and without considering the factors set forth in CPL 510.30 (2) (a). The parties also agreed to the facts underlying the specific cases outlined in Charges II through VII. The agreed statement of facts made no recommendation as to a sanction.[2]
*357 After submission of written memoranda and oral argument, the Commission issued a determination sustaining all of the charges in the complaint (except for a charge withdrawn pursuant to the parties’ agreement [see, supra, n 1]) and ordering petitioner’s removal from office. Petitioner requested review of the Commission’s determination by this Court, thus invoking our authority to "review the commission’s findings of fact and conclusions of law” and to "impose a less or more severe sanction” than that imposed by the Commission (NY Const, art VI, § 22 [d]; Matter of Kiley, 74 NY2d 364, 368).
Petitioner’s primary argument before us is that the Commission’s interpretation of CPL 530.20 as requiring him to order recognizance or bail in all nonfelony cases is either erroneous or, if it is correct, the point is sufficiently arguable that his actions in accord with a contrary interpretation amount only to an error of law, not misconduct.
The statute provides in relevant part,
"When a criminal action is pending in a local criminal court, such court, upon application of a defendant, must or may order recognizance or bail as follows:
"1. When the defendant is charged * * * with an offense or offenses of less than felony grade only, the court must order recognizance or bail.” (CPL 530.20 [1].)
Petitioner contends that, according to the introductory phrase of the statute, his duty to order recognizance or bail is only triggered if an application is made by the defendant. He notes that there is no proof in the record that any defendant made such an application. We reject this argument for several reasons.
While an application by the defendant may be required in some other procedural settings — a question we do not pass upon — in the usual case it is plainly the court’s duty to order *358 bail or recognizance in a nonfelony case at the time the defendant is arraigned. CPL 170.10 (7) provides that, in such a case, "[u]pon the arraignment, the court, unless it intends to make a final disposition of the action immediately thereafter, must, as provided in subdivision one of section 530.20, issue a securing order either releasing the defendant on his own recognizance or fixing bail for his future appearance in the action”. The reference to CPL 530.20 does not, as petitioner contends, incorporate the entire statute, including the language purportedly requiring an application by the defendant. The reference is only to subdivision (1) of CPL 530.20 and not to the introductory phrase in which that supposed requirement appears. If CPL 170.10 (7) were read to require an application by the defendant, it would provide nothing not already provided by CPL 530.20.
Moreover, it makes little practical sense to require a defendant to make an application for recognizance or bail, a benefit of obvious importance and to which the defendant is entitled as a matter of right, at a time when the defendant is unlikely to be represented by counsel. Finally, we note that throughout the proceedings before the Commission petitioner conceded that, as a general matter, defendants are entitled to recognizance or bail in nonfelony cases. The agreed statement of facts provides that petitioner "was aware, at all times relevant herein, that the law requires that bail be set on a non-felony charge,” and nowhere in his testimony did petitioner suggest that his commitment of defendants without bail was justified because they made no application for bail or recognizance.
From this concession, the conclusion is inescapable that, in several cases during the four-year period investigated, petitioner improperly committed defendants to jail without bail, knowing that the law required that bail be set. We agree with the Commission to that extent and thus sustain the finding that petitioner knowingly committed legal error and engaged in sanctionable conduct.
However, the Commission’s determination overstates both the number and the nature of these acts. According to the Commission, petitioner improperly committed defendants without bail "on 96 occasions in 59 cases involving 44 defendants”. An example involving one of these defendants demonstrates that the Commission’s figures overstate the case.
According to petitioner’s testimony, a defendant named Rawling was arrested on October 13, 1987 and arraigned *359 either on that same day or on October 15. He was committed without bail and the case was adjourned to October 22 pending the outcome of a psychiatric examination to determine his capacity to understand the proceedings against him (see, CPL art 730). The psychiatric report, which found Rawling to be competent, was completed on October 20, but apparently was not yet available to petitioner by October 22, and the matter was again adjourned to October 29. On that date the matter was adjourned to November 5, when Rawling appeared with an attorney and entered a guilty plea. The plea agreement apparently contemplated some term of imprisonment, perhaps nine months. The matter was adjourned to December 10 and then to December 17, when Rawling was released on a conditional discharge. From the time of his arraignment until his release on December 17, Rawling was confined without bail.
According to a schedule attached to the agreed statement of facts, the charges pending against Rawling during this time included petit larceny, two counts of harassment and two weapons possession charges. The record does not reflect whether all of these were charged together or whether the charges accumulated while Rawling was confined. It is clear enough from the record, nevertheless, that to the extent that Rawling’s confinement was improper, it was a single episode relating to all of the charges. In reaching its determination that petitioner abused the bail process in 59 cases, however, the Commission treated this episode as five separate cases, based on the five criminal charges against the defendant. Similarly, in concluding that there were 96 instances of such misconduct, the Commission treated each time that the Rawling’s status was continued after an appearance — seven times in this example — as a separate instance of misconduct.
This methodology obviously inflates the numbers. More importantly, however, it suggests that the Commission relied heavily, if not exclusively, on the bare data contained in the charts prepared by Commission counsel in arriving at these figures. It is only by reading those charts apart from the context provided by petitioner’s explanatory testimony that one could conclude that the Rawling matter involved five separate cases. Apart from inflating the figures, this apparent failure to look at the cases individually and in context led to errors as a matter of substance, not only in the Rawling case but in several others as well.
For example, according to the Commission’s findings, the *360 entire two-month period of Rawling’s confinement was unlawful. Those findings overlook the fact that the bulk of that time, from defendant’s guilty plea on November 5 until his release on December 17, was postconviction confinement. While a defendant may be eligible for bail between conviction and sentence (see, CPL 530.45), it is not unusual or unlawful for a defendant, anticipating a period of incarceration, to choose to remain in jail to accumulate credit toward satisfaction of the impending sentence. Petitioner testified that, to the best of his recollection, that is precisely what occurred in the Bawling case.
In other cases, petitioner indicated that bail was not considered, at the request or with the acquiescence of defense counsel, because the defendants were being held on other charges or parole violation warrants which precluded their release. Defendants commonly eschew bail in these circumstances to ensure that they will receive maximum jail time credit (see, Penal Law § 70.30 [3]; § 70.40 [3] [c]). Where, as in these cases, petitioner’s failure to set bail is explainable as a tactical maneuver for the benefit of the defendants, it cannot be considered misconduct.
The Commission also erred when it determined that petitioner acted improperly when he committed Bawling to jail without bail in a later case following the defendant’s arrest for violation of the conditions of the conditional discharge previously granted. In such a case, commitment without bail is expressly authorized by the Criminal Procedure Law (CPL 410.60). Similar errors, in cases involving other defendants, occurred when the Commission overlooked specific provisions of the law authorizing commitment without bail, even when the defendant is nominally charged only with a nonfelony. In one case the defendant had failed to pay court-ordered restitution (see, CPL 420.10 [3]), and in another case the defendant violated a condition attached to an adjournment in contemplation of dismissal (see, CPL 530.13 [1], [8] [a]).
In another, larger category of cases, the Commission’s view of the law, although not clearly erroneous, is sufficiently debatable that petitioner’s actions pursuant to a different interpretation cannot be said to constitute misconduct. In each of these cases, involving approximately 16 defendants including Bawling, petitioner committed the defendant without bail because he believed that the defendant was in need of a psychiatric examination to determine his or her fitness to *361 proceed. In each case, according to petitioner, the defendant’s behavior indicated that he or she could not be relied upon to attend such an examination and there was no family member or other responsible person available to ensure that the defendant would attend.
The Commission does not dispute that the circumstances were as petitioner described them and has not suggested that petitioner was unjustified in ordering the examinations (cf, Matter of Sardino, 58 NY2d 286). The Commission contends, however, that even in these circumstances CPL 170.10 (7) and 530.20 (1) require that a defendant in a nonfelony case either be released on his own recognizance or be given the opportunity to be released on bail. The Commission may be correct.
On the other hand, subdivisions (2) and (3) of CPL 730.20, which deal specifically with procedures governing orders of examination, provide some support for petitioner’s position that he is vested with discretion to determine whether a defendant should be confined, either in jail or in a hospital, pending a psychiatric report. The ambiguity cannot and need not be resolved here; its resolution must await a proper case and the proper parties. It is sufficient for resolution of this case to point out that the ambiguity exists and that, because it exists, petitioner’s reading of the statutes one way or the other cannot constitute misconduct.
In four of the remaining cases, those involving defendants Barton, Novotny and Ortega and one of the three cases involving defendant Martin, we conclude, crediting petitioner’s uncontroverted testimony, that the charges of misconduct are not sustained. In these cases the record indicates that petitioner either did set bail, but court documents inaccurately reflect that he did not or, as in the Novotny case, the failure to set bail with respect to one of several simultaneous charges was simply inadvertent.
That leaves approximately 24 cases in which petitioner indeed failed to set bail without legal justification. Ten of these involved defendants who were initially released, either on recognizance or bail, but who failed chronically to make scheduled court appearances. The commitments without bail were made following the defendants’ arrests on bench warrants. Although petitioner understandably believed that incarceration was necessary to ensure these defendants’ appearances, his failure to set bail was nonetheless improper (see, CPL 530.60).
*362 In another nine cases, petitioner indicated that he did not set bail because, based on his knowledge of the defendants and in some cases pursuant to their explicit requests, he believed that they preferred to remain in jail. The defendants in these cases were homeless and in many cases suffering from both the immediate and chronic effects of drug or alcohol abuse. Petitioner believed that they were more comfortable, safer and better cared for in jail than they would be if they were returned to the streets from which they had just been removed. Although we cannot find fault with these concerns, they do not justify petitioner’s failure to abide by the statutory requirement that he at least set bail, if only in a nominal amount.
The remaining cases primarily involved instances in which the defendant’s identification was not established to petitioner’s satisfaction. A lack of information about the defendant’s identity, including the defendant’s history and ties to the community, might properly be a factor in determining the amount of bail necessary to secure his or her appearance (see, CPL 510.30 [2]). But there is no provision in the law for denying bail on that basis in a nonfelony case. Accordingly, petitioner acted improperly in these cases, too.
Little need be said about the charge that petitioner improperly set bail on arrest warrants and bench warrants. The practice of indicating a suggested bail on such warrants, it has been noted, is common and, although it may not be advisable, it is not prohibited by any statute (see, Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 120.40, at 133 [1981]). The purpose of a notation indicating a specific amount of bail on an arrest warrant, according to petitioner’s testimony, is to allow the arrestee to post bail immediately, without having to wait for arraignment. A notation of "no bail”, which petitioner commonly included on bench warrants, was to ensure that the defendant would be brought before him and not released until petitioner could inquire about the reasons for missed appearances. In cases where the defendant is in default of bail, the law requires that he or she be brought before the court in which the warrant is returnable (CPL 120.90 [3]); thus, a notation for that purpose may be superfluous, but it is not contrary to law. As long as these notations do not preclude fair consideration of relevant bail factors when the defendant is brought before the court, we cannot say that their use constitutes misconduct.
*363 Finally, we note what is obvious from the foregoing discussion. Nothing in this record suggests that petitioner acted to advance his own interests over those of the defendants or that he was vindictive, biased, abusive or venal. On the contrary, it appears that, to the extent that petitioner’s actions were improper, they were motivated primarily by compassion for those whose problems do not belong in the criminal courts. At the worst, he exhibited impatience with those who abused their right to bail by ignoring scheduled court appearances. In the proceedings before the Commission, petitioner was forthright, cooperative and contrite. He readily agreed to change those practices found to be improper. Under these circumstances, the sanction of removal is too harsh.
Accordingly, the determined sanction should be rejected, without costs, the sanction of censure imposed, and the request for review of the November 12, 1991 order of the Commission dismissed.

. The first charge also contained an allegation that petitioner incarcerated defendants prior to trial for periods longer than the maximum pretrial detention periods set forth in CPL 30.30 (2). This charge was later withdrawn by agreement of the parties.

. An earlier draft of the agreed statement of facts had included a recommendation that the appropriate sanction was censure. Petitioner’s counsel objected to the inclusion of certain legal conclusions and asked that any sanction be private. Commission counsel refused to agree to a recommendation of a private sanction, but agreed to remove the legal conclusions and to omit any reference to a recommended sanction. The letter so advising *357 petitioner’s counsel noted that Commission counsel could recommend any sanction authorized by the Judiciary Law, including removal.
After the Commission determined that petitioner should be removed, petitioner sought to have the agreed statement of facts and the waiver of a hearing vacated, and to have the Commission reconsider the matter, on the ground that petitioner did not realize that the final version of the agreed statement of facts left open the possibility of removal. The Commission denied the motion in an order dated November 12, 1991 and petitioner now seeks review of that order. To that extent, the petitioner’s request for review must be dismissed. This Court does not have jurisdiction to entertain a request for review of such an order (NY Const, art VI, § 22; Judiciary Law § 44; see, Matter of Lenney, 70 NY2d 863).