[818 NE2d 1113, 785 NYS2d 372]

In the Matter of HENRY R. BAUER, Judge of the Troy City Court, Rensselaer County, Petitioner. STATE COMMISSION ON JUDICIAL CONDUCT, Respondent.

Argued September 13, 2004; decided October 14, 2004

**POINTS OF COUNSEL**

*Roche, Corrigan, McCoy & Bush,* Albany (*Robert P. Roche* of counsel), for petitioner.

*Robert H. Tembeckjian,* New York City, *Cathleen S. Cenci* and *Kathryn J. Blake* for respondent. I. Petitioner engaged in a pattern of disregarding fundamental rights by effectively denying defendants counsel, depriving them of their liberty without due process of law and coercing them to plead guilty. (*People ex rel. Klein v Krueger,* 25 NY2d 497; *Matter of Sardino v State Commn. on Jud. Conduct,* 58 NY2d 286.) II. Petitioner's conduct warrants his removal from judicial office. (*Matter of Sardino v State Commn. on Jud. Conduct,* 58 NY2d 286; *Matter of La-Belle,* 79 NY2d 350; *Matter of McGee v State Commn. on Jud. Conduct,* 59 NY2d 870; *Matter of Reeves,* 63 NY2d 105; *Matter of Esworthy,* 77 NY2d 280; *Matter of Aldrich v State Commn. on Jud. Conduct,* 58 NY2d 279; *Matter of Duckman,* 92 NY2d 141; *Matter of Sims,* 61 NY2d 349.)

### OPINION OF THE COURT

Per Curiam.

Petitioner, a Judge of the Troy City Court, seeks review of a determination of the State Commission on Judicial Conduct. With various members dissenting as to particular specifications, the Commission sustained 39 charges (containing 62 specifications) of misconduct and determined that petitioner should be removed from office (*see* NY Const, art VI, § 22; Judiciary Law § 44). Upon our plenary review of the record and after considering the evidence and legal arguments raised, we conclude that petitioner's conduct warrants removal.

By formal disciplinary complaint dated October 4, 2002, the Commission served petitioner with 51 charges, alleging that he often failed to advise defendants of their right to counsel, sentenced defendants in excess of the legal maximum, repeatedly jailed defendants when they could not meet the bail that petitioner set in excessive amounts, coerced defendants into pleading guilty and twice convicted defendants without a trial or guilty plea.

After petitioner submitted a verified answer in which he denied the allegations, the Commission appointed the Honorable Richard D. Simons as Referee to hear and report findings of fact and conclusions of law. Following a hearing conducted from July 28 through August 4, 2003, the Referee sustained all or part of 49 charges.

CPL 170.10 provides that upon arraignment the court must, among other things, inform defendants that they have the right to counsel at that time and at every subsequent stage of the ac-

tion (*see* CPL 170.10 [3]). Furthermore, if at arraignment the defendant is unrepresented, CPL 170.10 (3) obligates the court to inform the defendant of the right to an adjournment for the purpose of obtaining counsel (*see* CPL 170.10 [3] [a]), and of the right to communicate, free of cost, by letter or telephone, for the purpose of obtaining counsel and informing a relative or friend of the charge. In addition, the arraigning court must tell defendants that if they cannot afford an attorney the court will assign one. "[T]he court must . . . itself take such affirmative action as is necessary to effectuate [those rights]." (CPL 170.10 [4] [a].)

Based on the evidence presented, the Referee found, and the record establishes, that in many arraignments the petitioner did not inform defendants of the rights guaranteed in CPL 170.10. The Referee noted that petitioner sometimes "claimed that it was unnecessary because from their prior experiences defendants knew their rights." Petitioner also contended that, in some cases, he delayed advising defendants of their right to appointed counsel until he was satisfied that the defendants had first sought paid counsel. Finally, petitioner apparently believed the instructions were not necessary when defendants "were not alert enough to understand the advice." The Referee found those explanations insufficient and that petitioner's conduct did not fulfill his obligations under the statute either on arraignment or at subsequent court appearances.

We agree. The law does not contemplate judicial assessments as to whether defendants are experienced enough to know their rights without being told, nor does it authorize judges to inform defendants selectively as to their right to assigned representation. Moreover, if a defendant is not alert enough to understand the advice, the judge should not forgo it but must make sure the defendant *does* understand before proceeding, even—if necessary—briefly deferring the arraignment.

CPL 510.30 sets forth the criteria for setting bail. In fixing the amount necessary to secure a defendant's return to court, the judge must take into account the defendant's character, reputation, habits and mental condition, employment, financial resources, family ties, length of residence in the community, prior criminal record and the apparent strength of the charges.

The Referee found, and the record confirms, that on many occasions, petitioner jailed defendants in lieu of bail, without regard for the required standards. In particular, petitioner often

set shockingly high bail and, in several cases, remanded defendants to jail for several days for failure to post bail on charges for which imprisonment was not a legally permitted penalty or upon legally insufficient accusatory instruments. The Referee further concluded, and the evidence establishes, that in some instances petitioner held defendants in lieu of bail for periods beyond the maximum sentence for the offense charged or beyond the period required by speedy trial rules. Moreover, petitioner induced some defendants to plead guilty without the advice of counsel and without informing them that they were entitled to counsel—and only after petitioner had jailed them for longer than the allowable maximum sentence. Further, petitioner imposed illegally excessive sentences in four marijuana possession cases, and twice convicted defendants without pleas of guilty or findings of guilt.          ·

The Commission determined that petitioner violated 22 NYCRR 100.1 (requiring high standards of conduct to uphold the integrity of the judiciary); 22 NYCRR 100.2 (A) (mandating judges to respect and comply with the law and to act in a manner that promotes judicial integrity); 22 NYCRR 100.3 (B) (1) (obligating judges to be faithful to the law); 22 NYCRR 100.3 (B) (4) (requiring judges to perform judicial duties without bias or prejudice against or in favor of anyone); and 22 NYCRR 100.3 (B) (6) (obligating judges to accord litigants and lawyers the right to be heard according to law). The Commission concluded that, for a period of two years, petitioner engaged in a pattern of serious misconduct by repeatedly jailing defendants in violation of their rights. The Commission explained:

> "[Petitioner] ignored well-established law requiring judges to advise defendants of the right to counsel and to take affirmative action to effectuate that right. In numerous cases he set exorbitant, punitive bail for defendants charged with misdemeanors and violations, even where incarceration was not an authorized sentence. He coerced guilty pleas from incarcerated, unrepresented defendants who, if they refused to accept [petitioner's] plea offer, faced continued incarceration because of the unreasonably high bail he had set. He imposed illegal sentences in four marijuana cases, and on two separate occasions he convicted an incarcerated defendant in the defendant's absence by announcing that the case was 'a plea and time served,' although the defen-

dants had not pled guilty. [Petitioner's] failure to recognize the impropriety of his procedures compounds his misconduct and suggests that defendants in his court will continue to be at great risk. Viewed in its totality, [petitioner's] conduct demonstrates a sustained pattern of indifference to the rights of defendants and establishes that his future retention in office 'is inconsistent with the fair and proper administration of justice.' " (Citation omitted.)

At the Commission and before us, petitioner has consistently maintained that he has done nothing wrong. In his brief to this Court he states that he "believes that his conduct was appropriate under the circumstances," citing the purported rationale for his conduct in each instance. Petitioner goes so far as to contend that the "findings of fact on which the Respondent Commission bases its proposed sanction are in fact findings of non-fact as they violate or contradict all the testimonial evidence which was adduced at the hearing which is set forth in the transcript of hearing and made a part of this record." At another point, while protesting the findings, he attacks the motives of the Commission staff and even the Referee.

The charges, however, are fully borne out by the record. The testimony reveals a pattern of abuse by which petitioner on numerous occasions not only failed to advise defendants of their rights but perverted CPL 170.10 by telling defendants that they must engage their own attorneys—concealing from them that the statute requires the court to assign counsel when warranted and to see to it that the right to counsel is protected (*see People v Witenski*, 15 NY2d 392 [1965]). Rather than follow the law, petitioner, in a number of instances, engaged in verbal sparring with defendants and evinced an intent to defeat, not advance, the right to assigned counsel.

Instead of recognizing these failures, petitioner asks us to "examine the credentials of the people who investigated this case, prepared this case, made this case and preferred the charges on behalf of the Commission." Impugning the integrity of the Commission staff and the Referee, however, does not distract us from the considerable proof against petitioner.

In 26 instances, and without regard to the statutory criteria, petitioner set bails ranging from $10,000 to $50,000 for defendants who were charged with petty crimes or violations. By jailing defendants (in lieu of bail) for offenses that rarely, if at all, carry jail sentences upon conviction, petitioner abrogated

his duty and abused his position as a judge. Punishing people by setting exorbitant bail, particularly where the offense does not carry a jail sentence, demonstrates a callousness both to the law and to the rights of criminal defendants. Moreover, when coupled with a failure to advise these defendants of their right to assigned counsel, petitioner's imposition of punitive bail all but guaranteed that defendants would be coerced into pleading guilty: it was the only way to get out of jail.

We recognize that bail is discretionary and that there may be a wide range in the amounts set by reasonable judges. In reviewing petitioner's conduct, however, we see not an isolated instance of high or injudicious bail-setting, but a pattern of exorbitant bail so extraordinary that we must characterize it as abusive and coercive in the extreme, particularly when accompanied by petitioner's withholding from defendants their right to assigned counsel. We disagree with the dissenters' apparent position that excessive bail can never form the basis for removal. Even when the petitioner set a bail within his lawful discretion, he failed on several occasions to protect defendants' right to counsel. We provide the following examples to illustrate the nature of the petitioner's misconduct, but we note that the record reflects many more incidents of excessive bail and denial of counsel.

In one example, a teenaged defendant was charged with a violation. After the teenager spent the weekend in jail in lieu of $500 bail, he appeared before the petitioner without counsel. The petitioner made no offer of counsel to the defendant, and made no statement alerting the defendant to his right to counsel, even though an assistant public defender was in the courtroom at the time. The petitioner, without any appearance by a prosecutor or defense counsel, and without any explanation that the teenager's release from jail was not conditioned on his pleading guilty, told the defendant "If you plead guilty, I will impose a fine of $30 and sentence you to time served. Is that understood and acceptable?" The Referee and Commission concluded, and we agree, that petitioner coerced the guilty plea by denying the defendant's right to counsel and by abusing his authority to jail a defendant in lieu of bail.

In another case, without informing the defendant of his right to counsel or determining whether he needed appointed counsel, petitioner set bail at $25,000 for a defendant charged with riding a bicycle at night on a sidewalk and without appropriate lights. The maximum fine for the violations was $100, without the pos-

sibility of any incarceration. Nevertheless, the defendant suffered seven days in jail because he could not afford to satisfy the illegally high bail. Petitioner then secured a guilty plea from the defendant without any appearance by defense counsel.

In deciding whether to accept the Commission's determination that petitioner be removed, we are taking into account that petitioner has received support from a number of sources asserting that he has generally behaved fairly, even admirably. Defense lawyers, including the Public Defender, supported the petitioner before the Commission. Furthermore, in a report conducted several years before the earliest specification here, the Fund for Modern Courts praised the petitioner for his fairness to defendants. Nevertheless, proof that the petitioner can behave appropriately when being monitored does not negate the abundant evidence in the record that he has engaged in grievous misconduct when unmonitored.

From our perspective, it is not surprising that petitioner's supervising judge only rarely reviewed petitioner's bail decisions. The right to counsel, in practical respects, remains absolutely fundamental to the protection of a defendant's other substantive rights (*see People v Felder*, 47 NY2d 287, 295 [1979]). It is therefore highly unlikely that a defendant without a lawyer would have the practical knowledge necessary to secure judicial review of a bail judgment. Indeed, petitioner's coercive conduct most likely convinced many defendants that any move to protect their rights would result in more jail time. Contrary to Judge Smith's implicit suggestion in dissent that the test for denial of the right to counsel involves a determination of prejudice to the defendant, petitioner was not free to withhold counsel from defendants on the assumption that a lawyer would not have made a difference. We are not prepared to relieve judges of their statutory responsibilities, nor can we agree that the presence of a lawyer—particularly at critical stages of the proceedings—in fact would not have mattered. Similarly, the Public Defender's apparent ignorance of the petitioner's illegal bail practices is not inconsistent with the Commission's findings, given that the record shows that the petitioner set excessive bail especially when the defendants *lacked representation* from the Public Defender or any other assigned counsel. The Public Defender's praise for the petitioner in cases in which defendants were granted representation does not begin to outweigh the strong evidence that the petitioner improperly denied representation to many defendants, especially given the

Public Defender's inconsequential performance, as noted by Judge Smith in dissent, in representing defendants when petitioner did assign counsel.

In view of the multiple specifications of severe misconduct upheld by the Commission and confirmed by the record, we cannot allow petitioner to remain on the bench. Petitioner's apparent lack of contrition is telling. In some instances contrition may be insincere, and in others no amount of it will override inexcusable conduct. Here, while petitioner's conduct was far from uniformly foul, his utter failure to recognize and admit wrongdoing strongly suggests that, if he is allowed to continue on the bench, we may expect more of the same.

Accordingly, the determined sanction should be accepted, without costs.

READ, J. (dissenting). The State Commission on Judicial Conduct effectively snapshots occasions when petitioner, a Judge of the Troy City Court, unquestionably failed to fulfill his obligations under CPL 170.10. We agree that this conduct cannot be condoned and should be sanctioned. Unlike the majority, however, we refuse to find misconduct based on the allegation that petitioner routinely set excessive bails. We dissent because censure is the appropriate remedy.

Our first disagreement with the majority involves the Commission's decision to charge misconduct in 26 cases where it believes petitioner set "excessive bail." Even were we to agree that bail was "shockingly" high in these cases (majority op at 161), we question whether the Commission's authority extends to this highly discretionary judicial realm (*see e.g.* CPL 510.30 [2]). One of the members of the Commission, in a dissent recommending censure rather than removal, explained that

> "[t]hroughout its history, the Commission has cautiously refrained from intruding into areas that encroach upon judicial discretion. Expressing its reluctance to review a judge's bail determinations, the Commission stated in its 1991 annual report: 'Although the Commission has not authority to consider complaints that judges have abused their discretion in setting bail, it may consider complaints that judges have used the bail procedure for other than its intended purpose,' *e.g.*, to punish a defendant or coerce a guilty plea. I subscribe to this limitation upon our authority."

We agree.

The Commission's allegation that petitioner set excessive bails impinges on his discretion as a judge and is, in our opinion, outside the Commission's scope of authority. CPL 510.30 sets forth the factors on which an application for bail is determined. Critically, it provides that, except in specific circumstances prescribed by statute, "the issuance of an order of recognizance or bail and the terms thereof are *matters of discretion rather than of law*" (CPL 510.30 [2] [emphasis added]).

As the majority acknowledges, there is a "wide range in the amounts [of bail] set by reasonable judges" (majority op at 163). Because of this "wide range," bail determinations can only be reviewed on habeas corpus for an error of law, such as an abuse of discretion (*see People ex rel. Lazer v Warden*, 79 NY2d 839 [1992]). CPL 530.30 also provides relief from excessive bail, but it does not subject the arraigning judge's decision to review. Rather, it allows de novo review of a local criminal court's bail determination on application by the defendant to a superior court judge. A judge who abuses discretion in setting bail may err as a matter of law, but such errors of law are usually not grounds for judicial misconduct.

Bail determinations are not completely outside the Commission's scope of authority, however. In *Matter of LaBelle* (79 NY2d 350 [1992]), we concluded that by failing to follow the bail procedures in the CPL, petitioner "knowingly committed legal error and engaged in sanctionable conduct" (*id.* at 358). Here, the Commission refines its excessive bail argument by alleging that petitioner failed to "consider" the CPL 510.30 factors in setting bail, and improperly jailed defendants in lieu of bail. These charges, alleging a failure to follow statutory procedure, are firmly within the scope of the Commission's authority. We do not regard them to be sustainable, however, because petitioner testified that he did, in fact, "consider" the statutory factors, and we find no basis in the record to presume otherwise.[1]

In its recommendation, the Commission also suggests that petitioner used bail for impermissible reasons, concluding that he wielded bail not "to insure that the defendants would return to court, but . . . to insure that these defendants spent time in

---

1. We note that petitioner represented in his brief that he set approximately 2,500 bails per year. Given this volume of bail determinations, we further question whether the 26 instances of excessive bail alleged by the Commission so permeate petitioner's practice as to warrant removal rather than censure.

jail." If this charge were sustainable, it would be within the Commission's authority as defined in its own annual report. But we find no basis upon which to conclude that petitioner's goal was jail time rather than the defendant's appearance in court. Maybe lower bails would have achieved this purpose, but it cannot be said that petitioner's neglect to set lower bails amounted to misuse of the bail process.

Further, the Commission acknowledged that "the record does not establish that [petitioner] was motivated by bias against particular defendants or a class of defendants." This is significant because without an improper motive, all that remains of the Commission's allegation that petitioner was misusing the bail process is its conclusion that he was harsh. While the majority may be willing to imply misconduct from petitioner's admittedly severe bail process, we are not.

The Commission's real grievance is not the alleged excessiveness of bail standing alone, however. The Commission and the majority believe that the true misconduct in this record is that certain defendants, charged with crimes punishable only with fines, were secured by an order of bail and, being unable to meet bail, were jailed (majority op at 160-161). Nothing in the CPL forbids this result, as nothing restricts a judge's securing options based on the punishments available for the crime (see CPL 510.10). This situation arises from the necessity of a securing order in all cases, and so does not demonstrate a violation of law or any other impropriety, and cannot support a charge of judicial misconduct.

Having rejected the Commission's allegations concerning bail, we turn to the remaining charges. We agree that more should have been done to advise defendants of their rights under CPL 170.10. As the Referee concludes in his report, petitioner's justifications for his conduct are "insufficient and . . . [his] conduct did not fulfill his obligations under the statute." Had petitioner been censured, a change in his practice going forward would have been required.

But we caution that the Commission's entire CPL 170.10 case against petitioner consists of 19 sustained charges, which occurred during two years of a 10-year judicial career. There is no way to discern whether these cases are exceptions to or representative of petitioner's general conduct on the bench. Counsel for petitioner represented at oral argument that petitioner presides over approximately 3,400 arraignments a year, a

number which is in line with the statistical information in the record concerning case volume in Troy City Court. Moreover, at least four of the section 170.10 violations took place on Saturdays when no transcript was available. Unlike the majority, we are unwilling to infer from the absence of a record that a section 170.10 violation must have occurred (majority op at 164-165). We further note that no complaints were lodged against petitioner after the commencement of this investigation.

We also would refuse to sustain the allegations of "coerced guilty pleas" as independent acts of misconduct. The Commission offers no evidence that petitioner forced any defendant who wanted a trial to plead. The allegations are merely conclusions that the Commission reached based on its speculation about how petitioner's other alleged failures affected defendants.

The remaining allegations involve legal errors on petitioner's part, not knowing acts of judicial misconduct. The record shows that on two occasions, petitioner allowed pleas without the presence of the defendant,[2] and on four occasions, petitioner entered inaccurate fines and sentences, albeit with the consent of both the District Attorney and defense counsel. Petitioner admits these errors. We see nothing in these mistakes to transform them from ordinary judicial error into judicial misconduct.

Removal is a severe remedy—indeed a terminal remedy for a judge. "[T]he purpose of judicial disciplinary proceedings is not punishment but the imposition of sanctions where necessary to safeguard the Bench from unfit incumbents" (*Matter of Watson*, 100 NY2d 290, 303 [2003] [citation omitted]). None of the aggravating factors that have supported removal in past cases involving bail and section 170.10 are present here (*see e.g. Matter of Esworthy*, 77 NY2d 280 [1991] [failure to advise of right to counsel along with racist comments and intemperate manner warrants removal]; *Matter of Reeves*, 63 NY2d 105 [1984] [failure to advise of right to counsel, falsification of records, failure to obtain statutorily required financial statements from litigants and improper ex parte communication justify removal]; *Matter*

---

**2.** These two cases apparently involve CPL 340.20 (2) (a) which provides that "a plea to an information must be entered orally by the defendant in person *unless the court permits entry thereof by counsel upon the filing by him of a written and subscribed statement* by the defendant declaring that he waives his right to plead to the information in person and authorizing his attorney to enter a plea on his behalf as set forth in the authorization." (Emphasis added.) The record does not contain a subscribed statement and thus demonstrates a violation of section 340.20 (2).

of *Sardino v State Commn. on Jud. Conduct*, 58 NY2d 286 [1983] [failure to advise defendants of right to counsel and improper bail determinations combined with improper judicial temperament justifies removal]). This record reveals no intemperate behaviors and no discriminatory comments or motivations.

Moreover, prior to the appearance of the Commission in his courtroom, petitioner had never been cautioned that his conduct was inappropriate. The cases petitioner arraigned were misdemeanors or less with minor punishments and so were unlikely to result in appeal. Thus, as a Commission member pointed out in a dissent recommending censure, there was no appellate court looking over petitioner's shoulder and correcting his errors. His administrative judge testified under subpoena that from February 1998 to July 2003, he received no complaints regarding petitioner, his bail or his counsel practices. His "supervising judge" testified under subpoena that he had never had any occasion to counsel petitioner regarding his bail or counsel practices.

Prior to his tenure on City Court, petitioner served as assistant public defender in Rensselaer County. The Commission looked to this experience as evidence of petitioner's knowledge that his conduct was wrongful. An equally supportable conclusion is that petitioner's conduct as a judge was guided by his experience as a public defender. The record establishes that for at least 20 years, the practice in Rensselaer County has been for the court to determine whether a defendant should be assigned counsel, and not the Public Defender's Office, as is apparently the case elsewhere in the state. Thus, petitioner was charged with carrying out the dual roles of guarding the public fisc and informing defendants of their right to seek assigned counsel. Perhaps he conflated these two arguably incompatible roles and, having decided that assigned counsel was not warranted in a particular case, failed to fulfill his obligations under section 170.10. We do not offer this to excuse petitioner's conduct, but rather to provide context.

This longstanding practice in Rensselaer County may also explain why the record is replete with support from members of the legal community, particularly members of the defense bar. The Rensselaer County Public Defender testified that in his eight years on the job, none of his assistants had complained to him "about the bail practices" of petitioner. Indeed, the Public Defender's only complaint was that his office was "assigned,

maybe, cases where [it] shouldn't be" by petitioner. An assistant public defender praised petitioner for "being very respectful of clients' rights." A prominent private defense attorney appeared without a subpoena at petitioner's hearing. While his testimony was properly struck, his support for petitioner was clear. Other local attorneys also wrote the Commission to commend petitioner.

The Executive Director of the local Treatment Alternatives to Street Crime and supervisor of drug court in Troy stated that "[petitioner] is very concerned and has always been concerned about individuals and the way that they get from the criminal justice system into treatment." Moreover, "[h]e is interested in defendants on a personal level and one sees that as he relates to each of these defendants personally every time they appear before him." The Fund for Modern Courts published a glowing review of petitioner in 1998, prior to the commencement of the Commission's investigation. Petitioner was observed on behalf of the Fund a total of 64 times by 18 different monitors on 32 different occasions.

Finally, the majority adverts to petitioner's "lack of contrition" as a compounding factor (majority op at 165). While we agree that contrition is important, we also caution that judges must be allowed to defend their actions before the Commission and at the same time express a willingness to change their practices. This has apparently occurred here.

In his own testimony before the Commission, petitioner acknowledged that his conduct had, in fact, changed. When asked whether he had "changed [his] practices regarding bail," petitioner responded "I still consider the same factors," an apparent reference to his assertion that he always had, in fact, considered the statutory factors when setting bail. When asked whether his practices concerning section 170.10 had changed, he responded "Yes, there's been some revision, and when you look at transcripts, and certainly, when you're quizzed on matters such as these, you give it more attention." We need not gauge the sincerity of petitioner's words (majority op at 165), because the Commission's own witness, an assistant public defender, testified in July 2003 that, in the previous year and a half to two years—a period coinciding with the Commission's investigation—petitioner "has become pretty scrupulous about advising people of their right to counsel . . . and tries to make sure that they have counsel before any important decisions are made."

In short, the sustainable misconduct here primarily involves petitioner's failure to "fulfill his obligations" under section 170.10, which is akin to the error of the petitioner in *LaBelle* where censure was imposed. Three members of the Commission, in fact, dissented and recommended censure rather than removal.

We find it impossible to conclude, on the basis of this record, that petitioner will not respond to a censure. Because there is no evidence that he is unfit to serve as a judge, we also conclude that censure, rather than removal, is the proper remedy. Accordingly, we respectfully dissent.

R.S. Smith, J. (dissenting). Although I agree in substance with Judge Read's dissenting opinion, I write separately to present my own point of view on this difficult case.

Most of the accusations against petitioner charge two forms of misconduct: failing to advise defendants of their right to counsel, and setting excessive bail. In reading the Commission's findings, it is possible to get the impression that petitioner, on repeated occasions, denied counsel to indigent defendants and then took advantage of their unrepresented status to jail them by imposing excessive bail. If I thought this had occurred, I would vote for removal. I am convinced, however, that this impression is incorrect, and that petitioner's misconduct was somewhat less serious than it appears at first glance.

Petitioner did repeatedly fail to give defendants the information required by Criminal Procedure Law § 170.10 (3) and (4) (a), to the effect that the defendant has the right to counsel, to an adjournment to obtain counsel, to communicate for the purpose of obtaining counsel and to have counsel assigned if he or she cannot afford one. It does not seem, however, that petitioner's failure to recite the litany caused any defendant to be sent to jail. Conditions in the court in which petitioner sat apparently did not permit instantaneous, or even very rapid, action on behalf of a defendant by assigned counsel. This of course is troubling in itself, but it is not a problem that can be laid at petitioner's door. I see no indication in the record that any defendant who was remanded for failure to post bail would have avoided incarceration, or would have been released sooner, if he or she had had a court-appointed lawyer. Indeed, a number of the cases in which the Commission found that petitioner set excessive bail are cases in which the petitioner had appointed the Public Defender to represent the defendant, without apparent effect.

In short, the record does not show that, in failing to comply with the requirements of CPL 170.10 (3) and (4) (a), petitioner intended to, or did in fact, make the practical plight of indigent defendants significantly worse. Of course, this does not excuse his noncompliance; the rights of which the defendants should have been advised are very important ones, and petitioner should not have assumed that he was merely omitting an empty ritual. But to err in this way is not the same as deliberately depriving defendants of counsel in order to assure that bail rulings are not challenged.

I have thus concluded that the Commission's two main charges—the failure to inform defendants of their rights and the setting of high bail—are not parts of a single pattern of misconduct, but separate offenses, quite different in their gravity and their consequences; and I am satisfied that petitioner's failure to comply with CPL 170.10 would not, by itself, warrant a sanction more severe than censure.

I am much more troubled by petitioner's practices in setting bail. The Commission has identified more than a few instances of bail levels that are startling on their face: $25,000 on a charge of trespass; $25,000 on charges relating to the improper operation of a bicycle; $20,000 on a charge of possession of marijuana; $25,000 on a charge of loitering and jaywalking—the list goes on. When more closely scrutinized, some of the cases seem less egregious; some of the defendants may have been more serious malefactors—and thus perhaps more likely to abscond—than the relatively petty charges against them suggest. But the record contains at least one real horror story, the *Russell* case: a young man with no criminal record and strong community ties, arrested for loitering (in what he testified before the Referee, without contradiction, was merely a mixup by police officers), was remanded to jail in lieu of $10,000 bail.

It is possible to infer from this record that petitioner used very high bail, improperly, to give a brief taste of jail to defendants he thought would benefit from it; and also that in so doing he inevitably made occasional misjudgments that caused severe and unjustified hardships. This gives me serious pause. Yet I conclude, essentially for the reasons stated by Judge Read, that it would be a mistake to remove petitioner from the bench solely or primarily because of his bail decisions. Indeed, the Commission conceded at oral argument that it would be hard-pressed to justify removal based on the bail decisions alone. Bail decisions are discretionary, and judges should not be disciplined

for exercising their discretion, even where they have repeatedly exercised it poorly. It seems that in every case except the *Russell* case respondent is able to present an argument (though often not a very convincing one) in favor of his bail decision. Issues like these are better scrutinized on appeal or habeas corpus than in judicial disciplinary proceedings.

I find the Commission's charges relating to matters other than the right to counsel and bail to be of relatively little moment. The accusation that petitioner "coerced" guilty pleas seems to me redundant of the charge that he set excessive bail. A high level of bail can indeed be a very effective spur to a guilty plea, but I cannot see what other conduct of petitioner in these cases can fairly be called "coercive." And the remaining acts of which the Commission complains are, as Judge Read points out, simply isolated cases of legal error.

As the majority notes, petitioner's response to the Commission's charges was most unfortunate. He might have spared himself much of his present trouble had he reacted to the Commission's investigation by saying, in substance: "I'm sorry. I made mistakes. I won't do it again." He reacted instead with outraged defiance, and with an ill-judged, and wholly unsuccessful, attempt to show that his disciplinary problems stemmed from an unholy alliance among the Commission's staff, the Commission's Referee and the American Civil Liberties Union. I thus agree with the majority that petitioner's lack of contrition may be taken into account here. But it does not, in my view, more than balance the mitigating factors summarized in Judge Read's opinion—evidence indicating that petitioner has been, in many important respects, quite a good judge.

While both absence of contrition and mitigation are relevant, I do not believe that either should be the decisive factor here, or in most cases involving judicial discipline. The central issue must be whether the petitioner's conduct was sufficiently bad to warrant his removal from the bench. In this case, I conclude by a narrow margin that it was not, and I therefore dissent from the Court's decision.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK and ROSENBLATT concur in per curiam opinion; Judge READ dissents in a separate opinion in which Judge GRAFFEO concurs; Judge R.S. SMITH dissents in another opinion.

Determined sanction accepted, without costs, and Henry R. Bauer removed from the office of Judge of the Troy City Court, Rensselaer County.